UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BRADLEY LEWIS RUDERMAN, ) <br> ) <br> Defendant. ) <br> ) <br> ) <br> ) <br>_____ ) | CR 09 00757 <br><br> **I N F O R M A T I O N** <br><br> [18 U.S.C. § 1343: Wire Fraud; 15 U.S.C. § 80b-6(1), b-17: Investment Adviser Fraud; 26 U.S.C. § 7203: Willful Failure to File Tax Return; 18 U.S.C. § 2(b): Causing an Act to be Done] |

The United States Attorney charges:

COUNTS ONE AND TWO

[18 U.S.C. § 1343]

I.   **INTRODUCTION**

1.   At all times pertinent to this information:

a.   Defendant BRADLEY LEWIS RUDERMAN ("defendant RUDERMAN") was a resident of Beverly Hills, California, within the Central District of California.

RAK/COM:rak

      b.   Defendant RUDERMAN was a registered representative of various securities brokerage firms from 1987 through 1998. Beginning in or about 2000, defendant RUDERMAN formed Ruderman Capital Management, LLC ("RCM") for the purpose of investing and managing his own funds and the funds of certain other investors. Defendant RUDERMAN was an owner and the manager of RCM, which functioned as his alter-ego.

      c.   Operating through RCM, defendant RUDERMAN engaged in the business of advising others as to the value of securities and the advisability of investing in, purchasing, and selling securities, and, for compensation and as part of a regular business, issued and promulgated analyses and reports concerning securities. Defendant RUDERMAN provided investment advisor services to, among others, the hedge funds Ruderman Capital Partners, LLC ("RCP") and Ruderman Capital Partners A, LLC ("RCP-A") (hereinafter together "the Funds"), and the individual investors in the Funds.

## II. THE FRAUDULENT SCHEME

2.   Beginning on a date unknown but no later than 2003, and continuing until at least April 15, 2009, within the Central District of California and elsewhere, defendant RUDERMAN, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material

facts.

3. The scheme to defraud operated, in substance, in the following manner and by the following means:

   a. Defendant RUDERMAN formed RCP in or about 2003 and RCP-A in or about 2005. Defendant RUDERMAN formed RCP for the purpose of obtaining investments from third parties; RCP-A was formed for the purpose of expanding the scope of potential investors to include retirement funds. RCM was the Managing Member and Investment Adviser of both RCP and RCP-A.

   b. Defendant RUDERMAN would solicit investments into RCP and RCP-A from victim-investors. Defendant RUDERMAN represented to victim-investors that their money would be invested to achieve above-average capital appreciation.

   c. Defendant RUDERMAN would not invest the money entrusted to him by victim-investors as he had promised to do. Instead, without informing the victim-investors or obtaining their authorization, defendant RUDERMAN would use the victim-investor funds to make "interest" payments and returns of capital to other victim-investors; to fund cash disbursements to himself; to fund his gambling activities; and to pay his own personal expenses and obligations arising from other business activities.

   d. Defendant RUDERMAN would provide false and fraudulent account statements and *Partner's Share of Income, Deductions, Credits, etc.* ("IRS Schedule K-1s") to the victim-investors which purported to show gains in their investment accounts. The purpose of these false and fraudulent account statements and IRS Schedules K-1 was three-fold: first, to

prevent the victim-investors from discovering that defendant RUDERMAN was not investing their funds as he had promised; second, to persuade the victim-investors to invest additional monies in the Funds; and third, to encourage the victim-investors to recommend the Funds to other potential investors.

    4.   To execute the scheme to defraud, defendant RUDERMAN would make the following materially false representations and promises to victim-investors:

    a.   That the victim-investors' money would be invested in a diversified selection of equities.

    b.   That the Funds earned consistent yearly gains of between 15% and 61%. For example, in February 2009, defendant RUDERMAN prepared and sent a *Portfolio Analysis Report*, dated January 31, 2009, to investors in which he included a table showing the following purported Fund Performance of RCP:

| YEAR | PERCENTAGE GAIN |
|------|-----------------|
| 2003 | 60.56% |
| 2004 | 32.17% |
| 2005 | 23.30% |
| 2006 | 22.02% |
| 2007 | 19.09% |
| 2008 | 14.99% |

    c.   That the Funds had between $67 million and $207 million worth of assets under management. For example, defendant RUDERMAN sent annual reports to victim-investors in which he stated that the total assets of RCP were approximately as follows:

| YEAR | ASSETS |
|------|--------|
| 2003 | $67.3 million |
| 2004 | $95.2 million |
| 2005 | $119.7 million |
| 2006 | $148.8 million |
| 2007 | $179.5 million |
| 2008 | $207.8 million |

     d.    That the *Portfolio Analysis Reports* and *Annual Reports of Financial Condition* that defendant RUDERMAN prepared and sent to the victim-investors accurately reflected the true financial condition of RCP;

     e.    That the *Statements of Income and Loss*; *Capital Account Statements*; and IRS Schedules K-1 that defendant RUDERMAN prepared and sent to each victim-investor accurately reflected the true performance of each victim-investor's account;

     f.    That certain well-known financiers and entertainment industry executives had invested in the Funds;

     g.    That the financial statements of the Funds were audited by independent auditors, namely Rothstein Kass ("RKCO LLP"), which had conducted its audits in accordance with the standards of the Public Company Accounting Oversight Board.

     h.    That RCM's annual compensation for its investment adviser services would be limited to the following: (i) a management fee, to be paid by each investor and to be equal to 1% of the investor's reported capital account balance as of the first day of the applicable fiscal year; and (ii) a performance-

based incentive payment equal to 20% of the appreciation in the investor's capital account balance during the year, so long as the net capital appreciation in the investor's account met or exceeded 8% after the incentive payment for the year.

5. In truth and in fact, as defendant RUDERMAN then well knew:

    a. The victim-investors' money was not invested in a diversified selection of equities;

    b. The Funds did not earn the consistent yearly gains of between 15% and 61% as defendant RUDERMAN claimed. For example, in 2008, RCP had no gain whatsoever and, in fact, lost over $3 million;

    c. The Funds did not have the amounts under management that defendant RUDERMAN claimed. For example, at the end of 2008, the Funds had a net value of $588,246;

    d. The *Portfolio Analysis Reports* and *Annual Reports of Financial Condition* that defendant RUDERMAN prepared and sent to the victim-investors did not accurately reflect the true financial condition of RCP;

    e. The *Statements of Income and Loss*; *Capital Account Statements*; and IRS Schedules K-1 that defendant RUDERMAN prepared and sent to each victim-investor did not accurately reflect the true performance of each victim-investor's account; and the false IRS Schedules K-1 would result in the victim-investors paying taxes that they, in fact, did not owe;

    f. The identified financiers and entertainment industry executives had not invested in the Funds;

  g. The financial statements of the Funds had not been independently audited and defendant RUDERMAN had fabricated the Report of Independent Auditors included in the RCP Annual Report of Financial Condition - December 31, 2007, which was purportedly prepared by RKCO LLP; and

  h. RCM's compensation for its investment adviser services was not limited to an annual management fee and a performance-based incentive payment. In fact, defendant RUDERMAN withdrew and took for himself monies from the Funds at any time and in any amount he chose.

6. Further to execute the scheme to defraud, defendant RUDERMAN would conceal the following material facts from the victim-investors:

  a. Instead of investing the victim-investors' money as promised, defendant RUDERMAN used the victim-investors' money to make "interest" payments and returns of capital to other victim-investors; to fund cash disbursements to himself; to fund his gambling activities; and to pay his own personal expenses and obligations arising from other business activities.

  b. Defendant RUDERMAN had been censured, fined and subjected to a four-month bar from membership by the New York Stock Exchange, Inc., on or about February 14, 2001.

  c. Defendant RUDERMAN had paid a former client $550,000 to settle allegations that defendant RUDERMAN had traded securities owned by the client without the client's authorization, resulting in a loss to the client of over $500,000.

7. Further to execute the scheme to defraud, defendant

RUDERMAN would make false and misleading representations and promises to the victim-investors for the purpose of lulling the victim-investors into believing that the money they had entrusted to him was safe and dissuading them from redeeming their investments.

III. **THE EFFECT OF THE SCHEME TO DEFRAUD**

8.  Through the above-described scheme to defraud, defendant RUDERMAN induced at least 22 victim-investors to give approximately $44.3 million to him.

///
///
///

IV. **EXECUTIONS OF THE FRAUDULENT SCHEME**

9. On or about the dates set forth below, within the Central District of California, and elsewhere, defendant RUDERMAN, for the purpose of executing and attempting to execute the above-described scheme to defraud, willfully caused the following items to be transmitted by means of wire and radio communication in interstate commerce:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| ONE | 1/20/09 | $500,000, invested by L.N. in RCP, wired from Goldman Sachs Execution & Clearing, LP account number 75VY through the Federal Reserve Bank of New York processing office in New Jersey, to RCP's City National Bank account number XXXXX2882 in Los Angeles, California |
| TWO | 1/23/09 | $300,000, invested by A.A. in RCP, wired from Goldman Sachs Execution & Clearing, LP account number 75VY through the Federal Reserve Bank of New York processing office in New Jersey, to RCP's City National Bank account number XXXXX2882 in Los Angeles, California |

///
///
///

## COUNTS THREE AND FOUR

[15 U.S.C. § 80b-6(1), b-17]

10. The United States Attorney repeats and realleges paragraphs one through eight of this information as if fully set forth herein.

11. At all times pertinent to this information, in assisting members of RCP and RCP-A, defendant RUDERMAN through his alter-ego RCM served as an "investment adviser" within the meaning of Title 15, United States Code, Section 80b-2(11). While managing RCP and RCP-A, defendant RUDERMAN through his alter-ego RCM engaged in the business of advising others for compensation as to the value of securities and as to the advisability of investing in, purchasing and selling securities.

12. Beginning on a date unknown but no later than in or about 2003 and continuing until at least April 15, 2009, in the Central District of California and elsewhere, defendant RUDERMAN, while acting as an investment adviser, knowingly and willfully, and with the intent to defraud, employed a device and scheme to defraud the members of RCP and RCP-A and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the members and prospective members of RCP and RCP-A. The manner and means by which this scheme was carried out are more fully described in paragraphs three through eight of this information.

13. On or about the dates set forth below, in the Central District of California and elsewhere, defendant RUDERMAN, while serving as an investment adviser, and in furtherance of the above-described fraudulent scheme, directly and indirectly caused

the use of the means and instrumentalities of interstate commerce and the use of the mails in carrying out the aforementioned scheme to defraud, as follows:

| COUNT | DATE | VICTIM | ITEM MAILED |
|---|---|---|---|
| THREE | 3/24/09 | K. Family Trust | Statement of Income and Loss and Capital Account Statement for the period ending 12/31/2008 and IRS Schedule K-1 for 2008 sent by Federal Express to J.K., as trustee for K. Family Trust, in Los Angeles, California, from defendant RUDERMAN in Beverly Hills, California |
| FOUR | 3/24/09 | H. Family Trusts A and B | Statement of Income and Loss and Capital Account Statement for the period ending 12/31/2008 and IRS Schedule K-1 for 2008 sent by Federal Express to I.H., as trustee for H. Family Trusts A and B, in Northridge, California, from defendant RUDERMAN in Beverly Hills, California |

## COUNT FIVE

[26 U.S.C. § 7203]

14. During the calendar year 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendant RUDERMAN had and received a gross income of at least $2.072 million and was required by law, on or before October 15, 2008, to make an income tax return to the Director, Internal Revenue Service Center, at Fresno, California, or any other proper officer of the United States, stating specifically the items of his gross income and any deductions and credits to which he was entitled for calendar year 2007. Knowing these facts, defendant RUDERMAN willfully failed to make an income tax return to said Director of the Internal Revenue Service Center, or to any other proper officer of the United States, within or at the time required by law and regulation, in violation of Title 18, United States Code, Section 7203.

THOMAS P. O'BRIEN
United States Attorney

*[signature]* Daniel J. Goodman, Asst. U.S. Atty
Deputy Chief, Criminal Division, FOR:

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

DOUGLAS A. AXEL
Assistant United States Attorney
Chief, Major Frauds

RANEE A. KATZENSTEIN
Assistant United States Attorney
Deputy Chief, Major Frauds

CHERYL O'CONNOR MURPHY
Assistant United States Attorney
Major Frauds