THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
RANEE KATZENSTEIN (CA Bar No. 187111)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
CHERYL O'CONNOR MURPHY (CA Bar No. 173897)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2432/0759
    Facsimile: (213) 894-6269
    E-Mail:  ranee.katzenstein@usdoj.gov
              cheryl.murphy@usdoj.gov



Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. CR-09-00757 |
| | ) | |
| Plaintiff, | ) | PLEA AGREEMENT FOR DEFENDANT |
| | ) | BRADLEY L. RUDERMAN |
| v. | ) | |
| | ) | |
| BRADLEY L. RUDERMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

1.  This constitutes the plea agreement between BRADLEY L.
RUDERMAN ("defendant") and the United States Attorney's Office
for the Central District of California ("the USAO") in the
investigation of defendant's scheme to defraud investors through
his limited liability company RUDERMAN CAPITAL MANAGEMENT, LLC
("RCM") and his hedge funds RUDERMAN CAPITAL PARTNERS, LLC
("RCP") and RUDERMAN CAPITAL PARTNERS A, LLC ("RCPA"), and his

1  filure to file a federal income tax return for calendar year s
2  2007.   This agreement is limited to the USAO and cannot bind any
3  other federal, state or local prosecuting, administrative or
4  regulatory authorities.

5                              PLEA

6       2.   Defendant gives up the right to indictment by a grand
7  jury and agrees to plead guilty to a five-count information in
8  the form attached to this agreement or a substantially similar
9  form.

10                    NATURE OF THE OFFENSES

11      3.   In order for defendant to be guilty of counts one and
12  two, which charge violations of Title 18, United States Code,
13  Section 1343 (wire fraud), the following must be true:   (1) the
14  defendant made up a scheme or plan for obtaining money or
15  property by making false promises or statements; (2) the
16  defendant knew that the promises or statements were false;
17  (3) the promises or statements were material, that is they would
18  reasonably influence a person to part with money or property;
19  (4) the defendant acted with an intent to defraud; and (5) the
20  defendant used, or caused to be used, the wires to carry out an
21  essential part of the scheme or plan.

22      In order for defendant to be guilty of counts three and
23  four, which charge violations of Title 15, United States Code,
24  Section 80b-6(1), b-17 (investment adviser fraud), the following
25  must be true: (1) the defendant was an "investment adviser" (that
26  is, a person who, for compensation, engages in the business of
27  advising others, either directly or through publications or
28  writings, as to the value of securities or as to the advisability

                               2

1  of investing in, purchasing, or selling securities, or who, for
2  compensation and as part of a regular business, issues or
3  promulgates analyses or reports concerning securities); (2) the
4  defendant knowingly directly or indirectly employed a device,
5  scheme, or artifice to defraud any client or prospective client;
6  (3) the defendant acted willfully and with the intent to defraud;
7  and (4) the defendant employed such device, scheme, or artifice
8  to defraud by use of the mails or other instrumentality of
9  interstate commerce.

10      In order for defendant to be guilty of count five, which
11  charges a violation of Title 26, United States Code, Section 7203
12  (failure to file tax return), the following must be true: (1) the
13  defendant owed federal income tax for the calendar year ending
14  December 31, 2007; (2) the defendant failed to file an income tax
15  return by October 15, 2008; and (3) the defendant acted for the
16  purpose of evading his duty under the tax laws and not as a
17  result of accident or negligence.

18      Defendant admits that defendant is, in fact, guilty of these
19  offenses as described in counts one through five of the
20  information.

21                    PENALTIES AND RESTITUTION
22      4.  The statutory maximum sentence that the Court can impose
23  for each violation of Title 18, United States Code, Section 1343
24  is: 20 years imprisonment; a three-year period of supervised
25  release; a fine of $250,000 or twice the gross gain or gross loss
26  resulting from the offense, whichever is greatest; and a
27  mandatory special assessment of $100.

28      The statutory maximum sentence that the Court can impose for

                              3

each violation of Title 15, United States Code, Section 80b-6, b-17 is: 5 years imprisonment; a three-year period of supervised release; a fine of $10,000; and a mandatory special assessment of $100.

The statutory maximum sentence that the Court can impose for each violation of Title 26, United States Code, Section 7203 is: 1 year imprisonment; a one-year period of supervised release; a fine of $25,000; and a mandatory special assessment of $25.

Therefore, the total maximum sentence for all offenses to which defendant is pleading guilty is: 51 years imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses in counts one and two, whichever is greatest, plus $45,000; and a mandatory special assessment of $425.

5. The Court may order defendant to pay any additional taxes, interest and penalties that defendant owes to the United States. Also, the Court must order defendant to pay the costs of prosecution of count five, which may be in addition to the statutory maximum fine stated above.

6. Defendant understands that defendant will be required to pay full restitution to the victims of the offenses. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the amount of restitution is not restricted to the amounts alleged in the counts to which defendant is pleading guilty and may include losses arising from all relevant conduct in connection with those counts. The government currently believes that the applicable amount of restitution is $25,132,373, but the parties recognize and agree

4

1  that this amount could change based on facts that come to the
2  attention of the parties prior to sentencing.  Defendant further
3  agrees that defendant will not seek the discharge of any
4  restitution obligation, in whole or in part, in any present or
5  future bankruptcy proceeding.

6      7.  Supervised release is a period of time following
7  imprisonment during which defendant will be subject to various
8  restrictions and requirements.  Defendant understands that if
9  defendant violates one or more of the conditions of any
10 supervised release imposed, defendant may be returned to prison
11 for all or part of the term of supervised release, which could
12 result in defendant serving a total term of imprisonment greater
13 than the statutory maximum stated above.

14     8.  Defendant also understands that, by pleading guilty,
15 defendant may be giving up valuable government benefits and
16 valuable civic rights, such as the right to vote, the right to
17 possess a firearm, the right to hold office, and the right to
18 serve on a jury.

19     9.  Defendant further understands that the convictions in
20 this case may subject defendant to various collateral
21 consequences, including but not limited to deportation,
22 revocation of probation, parole, or supervised release in another
23 case, and suspension or revocation of a professional license.
24 Defendant understands that unanticipated collateral consequences
25 will not serve as grounds to withdraw defendant's guilty pleas.

26                          FACTUAL BASIS

27     10.  Defendant and the USAO agree and stipulate to the
28 statement of facts provided below.  This statement of facts is

                               5

1  sufficient to support pleas of guilty to the charges described in
2  this agreement and to establish the sentencing guideline factors
3  set forth in paragraph 13 below.  It is not meant to be a
4  complete recitation of all facts relevant to the underlying
5  criminal conduct or all facts known to either party that relate
6  to that conduct.

7                          **SEE ATTACHMENT**

8                  WAIVER OF CONSTITUTIONAL RIGHTS

9      11.  By pleading guilty, defendant gives up the following
10 rights:

11              a) The right to persist in a plea of not guilty.

12              b) The right to a speedy and public trial by jury.

13              c) The right to the assistance of legal counsel at
14 trial, including the right to have the Court appoint counsel for
15 defendant for the purpose of representation at trial.  (In this
16 regard, defendant understands that, despite his pleas of guilty,
17 he retains the right to be represented by counsel -- and, if
18 necessary, to have the court appoint counsel if defendant cannot
19 afford counsel -- at every other stage of the proceeding.)

20              d) The right to be presumed innocent and to have the
21 burden of proof placed on the government to prove defendant
22 guilty beyond a reasonable doubt.

23              e) The right to confront and cross-examine witnesses
24 against defendant.

25              f) The right, if defendant wished, to testify on
26 defendant's own behalf and present evidence in opposition to the
27 charges, including the right to call witnesses and to subpoena
28 those witnesses to testify.

                                6

1       g) The right not to be compelled to testify, and, if

2  defendant chose not to testify or present evidence, to have that

3  choice not be used against defendant.

4      By pleading guilty, defendant also gives up any and all

5  rights to pursue any affirmative defenses, Fourth Amendment or

6  Fifth Amendment claims, and other pretrial motions that have been

7  filed or could be filed.

8  SENTENCING FACTORS

9     12.  Defendant understands that the Court is required to

10  consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7),

11  including the kinds of sentence and sentencing range established

12  under the United States Sentencing Guidelines ("USSG" or

13  "Sentencing Guidelines"), in determining defendant's sentence.

14  Defendant further understands that the Sentencing Guidelines are

15  advisory only, and that after considering the Sentencing

16  Guidelines and the other § 3553(a) factors, the Court may be free

17  to exercise its discretion to impose any reasonable sentence up

18  to the maximum set by statute for the crimes of conviction.

19     13.  Defendant and the USAO agree and stipulate to the

20  following applicable Sentencing Guidelines factors:

21  Group One (Counts 1-4)

Base Offense Level:               7___       USSG § 2B1.1(a)(1)

Amount of Loss
Between $20,000,000
and $50,000,000:                  +22        USSG § 2B1.1(b)(1)(L)

More than
10 Victims:                       +2         USSG § 2B1.1(b)(2)(A)(i)

Violation of
Securities Law by
Investment Adviser:               +4         USSG § 2B1.1(b)(16)(A)(iii)

7

| Group Two (Count 5) | | |
| Base Offense Level (Tax Loss Between $1,000,000 and $2,500,000): | 22 | USSG §§ 2T1.1(a)(1); 2T4.1(I) |
| Failure to Report Criminally Derived Income Exceeding $10,000: | +2 | USSG § 2T1.1(b)(1) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. Specifically, the government reserves the right to argue, among other things, that a two-level upward adjustment for use of sophisticated means pursuant to USSG § 2B1.1(b)(9)(C) should be applied.

14. There is no agreement as to defendant's criminal history or criminal history category.

15. Defendant and the USAO, pursuant to the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7), further reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines.

16. The stipulations in this agreement do not bind either the United States Probation Office or the Court. Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.

### DEFENDANT'S OBLIGATIONS

17. Defendant agrees that he will:

a) Plead guilty as set forth in this agreement.

b) Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

c) Not knowingly and willfully fail to: (i) appear for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under USSG § 4A1.2(c) are not within the scope of this agreement.

e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

f) Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and submits a completed financial statement (form OBD-500) to the USAO prior to sentencing.

18. Defendant admits that defendant received unreported income for 2004, 2005, 2006, 2007, and 2008. Defendant agrees to cooperate with the Internal Revenue Service in the determination of defendant's tax liability for 2004, 2005, 2006, 2007, and 2008. Defendant agrees to cooperate with the Internal Revenue Service in the determination of the tax liability of RCM and RCP for 2004, 2005, 2006, 2007, and 2008. Defendant also agrees to cooperate with the Internal Revenue Service in the determination of the tax liability of RCP-A for 2006, 2007, and 2008.

Defendant specifically agrees:

a) That defendant will file, prior to the time of sentencing, initial returns for the years subject to the above admissions, correctly reporting unreported income, and will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns, and will pay at sentencing all additional taxes, and will pay promptly all penalties and interest assessed by the Internal Revenue Service to be owing as a result of any computational errors.

b) That nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant's returns after they are filed.

c) That defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

d) That defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of tax liability for 2004, 2005, 2006, 2007, and 2008.

e) To give up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

f) To sign closing agreements with the Internal Revenue Service contemporaneously with the signing of this plea

agreement, permitting the Internal Revenue Service to assess and collect the total amount owed for the defendant's tax years 2004, 2005, 2006, 2007, and 2008, inclusive of the civil fraud penalty for each year and statutory interest as provided by law.

19. Defendant further agrees:

a) To disclose to law enforcement officials, at a date and time to be set by the USAO, the whereabouts of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, defendant's illegal activities, and to forfeit all right, title, and interest in and to such items, which defendant admits constitute the proceeds of defendant's illegal activity or were used to facilitate defendant's criminal activity in violation of Title 18, United States Code, Section 1344.

b) To the Court's entry of an order of forfeiture at or before sentencing with respect to these assets and to the forfeiture of the assets.

c) To take whatever steps are necessary to pass to the United States clear title to the assets described above, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d) Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against these properties pursuant to Title 18, United States Code, Section 983. With respect to any criminal forfeiture ordered as a result of

1  this plea agreement, defendant  waives the requirements of
2  Federal Rules of Criminal Procedure 32.2 and 43(a) regarding
3  notice of the forfeiture in the charging instrument,
4  announcements of the forfeiture sentencing, and incorporation of
5  the forfeiture in the judgment.  Defendant acknowledges that
6  forfeiture of the assets is part of the sentence that may be
7  imposed in this case and waives any failure by the court to
8  advise defendant of this, pursuant to Rule 11(b)(1)(J), at the
9  time defendant's guilty plea is accepted.
10         e) Not to assist any other individual in any effort
11  falsely to contest the forfeiture of the assets described above.
12         f) Not to claim that reasonable cause to seize the
13  assets was lacking.
14         g) To prevent the disbursement of any and all assets
15  described above if such disbursements are within defendant's
16  direct or indirect control.
17         h) To fill out and deliver to the USAO a completed
18  financial statement listing defendant's assets on a form provided
19  by the United States Attorney's Office.
20         i) That forfeiture of assets described above shall not
21  be counted toward satisfaction of any special assessment, fine,
22  restitution, or any other penalty the Court may impose.
23                    THE USAO'S OBLIGATIONS
24     20.  If defendant complies fully with all defendant's
25  obligations under this agreement, the USAO agrees:
26         a) To abide by all sentencing stipulations contained in
27  this agreement.
28         b) Not to further prosecute defendant for violations of

                              12

1  18 U.S.C. §§ 1341, 1343 or 15 U.S.C. § 80b-6(1), b-17 arising out

2  of defendant's conduct described in the stipulated factual basis

3  set forth in the attachment to this agreement.  Defendant

4  understands that the USAO is free to prosecute defendant for any

5  other unlawful past conduct or any unlawful conduct that occurs

6  after the date of this agreement.  Defendant agrees that at the

7  time of sentencing the Court may consider the uncharged conduct

8  in determining the applicable Sentencing Guidelines range, where

9  the sentence should fall within that range, the propriety and

10 extent of any departure from that range, and the determination of

11 the sentence to be imposed after consideration of the sentencing

12 guidelines and all other relevant factors.

13          c) To recommend that defendant be sentenced to a term

14 of imprisonment at the low end of the applicable Sentencing

15 Guidelines imprisonment range provided that the total offense

16 level as calculated by the Court is 30 or higher and provided

17 that the Court does not depart downward in offense level or

18 criminal history category.  For purposes of this agreement, the

19 low end of the Sentencing Guidelines imprisonment range is that

20 defined by the Sentencing Table in USSG Chapter 5, Part A.

21          d) At the time of sentencing, provided that defendant

22 demonstrates an acceptance of responsibility for the offenses up

23 to and including the time of sentencing, to recommend a two-level

24 reduction in the applicable sentencing guidelines offense level,

25 pursuant to USSG § 3E1.1, and to recommend and, if necessary,

26 move for an additional one-level reduction if available under

27 that section.

28          e) To recommend that defendant receive a two-level

13

1  downward adjustment in offense level to reflect his early and
2  extraordinary acceptance of responsibility, pursuant to the
3  Court's authority under <u>Booker</u> and 18 U.S.C. § 3553(a)(1).

4                          <u>BREACH OF AGREEMENT</u>

5      21.  If defendant, at any time after the execution of this
6  agreement, knowingly violates or fails to perform any of
7  defendant's agreements or obligations under this agreement ("a
8  breach"), the USAO may declare this agreement breached.  If the
9  USAO declares this agreement breached at any time following its
10  execution, and the Court finds such a breach to have occurred,
11  then: (a) if defendant has previously entered guilty pleas,
12  defendant will not be able to withdraw the guilty pleas, and
13  (b) the USAO will be relieved of all of its obligations under
14  this agreement.

15      22.  Following the Court's finding of a knowing and willful
16  breach of this agreement by defendant, should the USAO elect to
17  pursue any charge that was either dismissed or not filed as a
18  result of this agreement, then:

19          a) Defendant agrees that any applicable statute of
20  limitations is tolled between the date of defendant's signing of
21  this agreement and the commencement of any such prosecution or
22  action.

23          b) Defendant gives up all defenses based on the statute
24  of limitations, any claim of pre-indictment delay, or any speedy
25  trial claim with respect to any such prosecution, except to the
26  extent that such defenses existed as of the date of defendant's
27  signing this agreement.

28          c) Defendant agrees that: (i) any statements made by

1   defendant, under oath, at the guilty plea hearing (if such a
2   hearing occurred prior to the breach); (ii) the stipulated
3   factual basis statement in this agreement; and (iii) any evidence
4   derived from such statements, are admissible against defendant in
5   any such prosecution of defendant, and defendant shall assert no
6   claim under the United States Constitution, any statute, Rule 410
7   of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules
8   of Criminal Procedure, or any other federal rule, that the
9   statements or any evidence derived from any statements should be
10  suppressed or are inadmissible.

11                   LIMITED MUTUAL WAIVER OF APPEAL

12       23.   Defendant gives up the right to appeal any sentence
13  imposed by the Court, including any order of restitution, and the
14  manner in which the sentence is determined, provided that (a) the
15  sentence is within the statutory maximum specified above and is
16  constitutional, and (b) the Court imposes a sentence within or
17  below the range corresponding to a total offense level of 34 and
18  the applicable criminal history category as determined by the
19  Court.   Defendant also gives up any right to bring a post-
20  conviction collateral attack on the convictions or sentence,
21  including any order of restitution, except a post-conviction
22  collateral attack based on a claim of ineffective assistance of
23  counsel, a claim of newly discovered evidence, or an explicitly
24  retroactive change in the applicable Sentencing Guidelines,
25  sentencing statutes, or statutes of conviction.

26       24.   The USAO gives up its right to appeal the sentence,
27  provided that (a) the sentence is within the statutory maximum
28  specified above and is constitutional, and (b) the Court imposes

                              15

a sentence within or above the range corresponding to a total offense level of 34 and the applicable criminal history category as determined by the Court.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

25.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement; (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining counts of conviction, with both the USAO and defendant being released from all of their obligations under this agreement; or (c) leave defendant's remaining convictions, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

## COURT NOT A PARTY

26.  The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it

16

1  will be within the statutory maximum.

2                    NO ADDITIONAL AGREEMENTS

3      27.  Except as set forth herein, there are no promises,

4  understandings or agreements between the USAO and defendant or

5  defendant's counsel.  Nor may any additional agreement,

6  understanding or condition be entered into unless in a writing

7  signed by all parties or on the record in court.

8        PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

9      28.  The parties agree and stipulate that this Agreement

10  will be considered part of the record of defendant's guilty plea

11  hearing as if the entire Agreement had been read into the record

12  of the proceeding.

13      This agreement is effective upon signature by defendant and

14  an Assistant United States Attorney.

15  AGREED AND ACCEPTED

16  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA

17
    THOMAS P. O'BRIEN
18  United States Attorney

19

20  _____            _____
    RANEE KATZENSTEIN                      Date
    CHERYL O'CONNOR MURPHY
21  Assistant United States Attorneys

22
        I have read this agreement and carefully discussed every
23
    part of it with my attorney.  I understand the terms of this
24
    agreement, and I voluntarily agree to those terms.  My attorney
25
    has advised me of my rights, of possible defenses, of the
26
    sentencing factors set forth in 18 U.S.C. § 3553(a), of the
27
    relevant Sentencing Guidelines provisions, and of the
28

                              17

1  consequences of entering into this agreement.  No promises or

2  inducements have been given to me other than those contained in

3  this agreement.  No one has threatened or forced me in any way to

4  enter into this agreement.  Finally, I am satisfied with the

5  representation of my attorney in this matter.

6

7  _____          7/30/09

   BRADLEY L. RUDERMAN                       _____

8  Defendant                                 Date

9

10      I am BRADLEY L. RUDERMAN's attorney.  I have carefully

11  discussed every part of this agreement with my client.  Further,

12  I have fully advised my client of his rights, of possible

13  defenses, of the sentencing factors set forth in 18 U.S.C.

14  § 3553(a), of the relevant Sentencing Guidelines provisions, and

15  of the consequences of entering into this agreement.  To my

16  knowledge, my client's decision to enter into this agreement is

17  an informed and voluntary one.

18  _____          8/3/09

    JAMES RIDDET                             _____

19  Counsel for Defendant                    Date

20  Bradley L. Ruderman

21

22

23

24

25

26

27

28

                                18

**EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>BRADLEY LEWIS RUDERMAN,<br><br>        Defendant. | CR 09-_____<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1343: Wire<br>Fraud; 15 U.S.C. § 80b-6(1),<br>b-17: Investment Adviser Fraud;<br>26 U.S.C. § 7203: Willful<br>Failure to File Tax Return;<br>18 U.S.C. § 2(b): Causing an<br>Act to be Done] |

The United States Attorney charges:

COUNTS ONE AND TWO

[18 U.S.C. § 1343]

I.    INTRODUCTION

    1.    At all times pertinent to this information:

        a.    Defendant BRADLEY LEWIS RUDERMAN ("defendant RUDERMAN") was a resident of Beverly Hills, California, within the Central District of California.

RAK/COM:rak

b.    Defendant RUDERMAN was a registered representative of various securities brokerage firms from 1987 through 1998. Beginning in or about 2000, defendant RUDERMAN formed Ruderman Capital Management, LLC ("RCM") for the purpose of investing and managing his own funds and the funds of certain other investors. Defendant RUDERMAN was an owner and the manager of RCM, which functioned as his alter-ego.

c.    Operating through RCM, defendant RUDERMAN engaged in the business of advising others as to the value of securities and the advisability of investing in, purchasing, and selling securities, and, for compensation and as part of a regular business, issued and promulgated analyses and reports concerning securities. Defendant RUDERMAN provided investment advisor services to, among others, the hedge funds Ruderman Capital Partners, LLC ("RCP") and Ruderman Capital Partners A, LLC ("RCP-A") (hereinafter together "the Funds"), and the individual investors in the Funds.

II.  THE FRAUDULENT SCHEME

2.    Beginning on a date unknown but no later than 2003, and continuing until at least April 15, 2009, within the Central District of California and elsewhere, defendant RUDERMAN, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material

facts.

3.    The scheme to defraud operated, in substance, in the following manner and by the following means:

a.    Defendant RUDERMAN formed RCP in or about 2003 and RCP-A in or about 2005.  Defendant RUDERMAN formed RCP for the purpose of obtaining investments from third parties; RCP-A was formed for the purpose of expanding the scope of potential investors to include retirement funds.  RCM was the Managing Member and Investment Adviser of both RCP and RCP-A.

b.    Defendant RUDERMAN would solicit investments into RCP and RCP-A from victim-investors.  Defendant RUDERMAN represented to victim-investors that their money would be invested to achieve above average capital appreciation.

c.    Defendant RUDERMAN would not invest the money entrusted to him by victim-investors as he had promised to do. Instead, without informing the victim-investors or obtaining their authorization, defendant RUDERMAN would use the victim-investor funds to make "interest" payments and returns of capital to other victim-investors; to fund cash disbursements to himself; to fund his gambling activities; and to pay his own personal expenses and obligations arising from other business activities.

d.    Defendant RUDERMAN would provide false and fraudulent account statements and *Partner's Share of Income, Deductions, Credits, etc.* ("IRS Schedule K-1s") to the victim-investors which purported to show gains in their investment accounts.  The purpose of these false and fraudulent account statements and IRS Schedules K-1 was three-fold: first, to

3

1  prevent the victim-investors from discovering that defendant
2  RUDERMAN was not investing their funds as he had promised;
3  second, to persuade the victim-investors to invest additional
4  monies in the Funds; and third, to encourage the victim-investors
5  to recommend the Funds to other potential investors.

6      4.   To execute the scheme to defraud, defendant RUDERMAN
7  would make the following materially false representations and
8  promises to victim-investors:

9          a.   That the victim-investors' money would be invested
10 in a diversified selection of equities.

11         b.   That the Funds earned consistent yearly gains of
12 between 15% and 61%.  For example, in February 2009, defendant
13 RUDERMAN prepared and sent a *Portfolio Analysis Report*, dated
14 January 31, 2009, to investors in which he included a table
15 showing the following purported Fund Performance of RCP:

| YEAR | PERCENTAGE GAIN |
|------|-----------------|
| 2003 | 60.56% |
| 2004 | 32.17% |
| 2005 | 23.30% |
| 2006 | 22.02% |
| 2007 | 19.09% |
| 2008 | 14.99% |

23         c.   That the Funds had between $67 million and $207
24 million worth of assets under management.  For example, defendant
25 RUDERMAN sent annual reports to victim-investors in which he
26 stated that the total assets of RCP were approximately as
27 follows:

28                              4

| YEAR | ASSETS |
|------|--------|
| 2003 | $67.3 million |
| 2004 | $95.2 million |
| 2005 | $119.7 million |
| 2006 | $148.8 million |
| 2007 | $179.5 million |
| 2008 | $207.8 million |

d.   That the *Portfolio Analysis Reports* and *Annual Reports of Financial Condition* that defendant RUDERMAN prepared and sent to the victim-investors accurately reflected the true financial condition of RCP;

e.   That the *Statements of Income and Loss*; *Capital Account Statements*; and IRS Schedules K-1 that defendant RUDERMAN prepared and sent to each victim-investor accurately reflected the true performance of each victim-investor's account;

f.   That certain well-known financiers and entertainment industry executives had invested in the Funds;

g.   That the financial statements of the Funds were audited by independent auditors, namely Rothstein Kass ("RKCO LLP"), which had conducted its audits in accordance with the standards of the Public Company Accounting Oversight Board.

h.   That RCM's annual compensation for its investment adviser services would be limited to the following: (i) a management fee, to be paid by each investor and to be equal to 1% of the investors reported capital account balance as of the first day of the applicable fiscal year; and (ii) a performance-based

5

incentive payment equal to 20% of the appreciation in the
investor's capital account balance during the year, so long as
the net capital appreciation in the investor's account met or
exceeded 8% after the incentive payment for the year.

5.    In truth and in fact, as defendant RUDERMAN then well
knew:

a.    The victim-investors' money was not invested in a
diversified selection of equities;

b.    The Funds did not earn the consistent yearly gains
of between 15% and 61% as defendant RUDERMAN claimed.  For
example, in 2008 RCP had no gain whatsoever and, in fact, lost
over $3 million;

c.    The Funds did not have the amounts under
management that defendant RUDERMAN claimed.  For example, at the
end of 2008, the Funds had a net value of $588,246;

d.    The *Portfolio Analysis Reports* and *Annual Reports
of Financial Condition* that defendant RUDERMAN prepared and sent
to the victim-investors did not accurately reflect the true
financial condition of RCP;

e.    The *Statements of Income and Loss*; *Capital Account
Statements*; and IRS Schedules K-1 that defendant RUDERMAN
prepared and sent to each victim-investor did not accurately
reflect the true performance of each victim-investor's account;
and the false IRS Schedules K-1 would result in the victim-
investors paying taxes that they, in fact, did not owe;

f.    The identified financiers and entertainment
industry executives had not invested in the Funds;

g.   The financial statements of the Funds had not been independently audited and defendant RUDERMAN had fabricated the Report of Independent Auditors included in the RCP Annual Report of Financial Condition December 31, 2007, which was purportedly prepared by RKCO LLP; and

h.   RCM's compensation for its investment adviser services was not limited to an annual management fee and a performance-based incentive payment.   In fact, defendant RUDERMAN withdrew and took for himself monies from the Funds at any time and in any amount he chose.

6.   Further to execute the scheme to defraud, defendant RUDERMAN would conceal the following material facts from the victim-investors:

a.   Instead of investing the victim-investors' money as promised, defendant RUDERMAN used the victim-investors' money to make "interest" payments and returns of capital to other victim-investors; to fund cash disbursements to himself; to fund his gambling activities; and to pay his own personal expenses and obligations arising from other business activities.

b.   Defendant RUDERMAN had been censured, fined and subjected to a four-month bar from membership by the New York Stock Exchange, Inc., on or about February 14, 2001.

c.   Defendant RUDERMAN had paid a former client $550,000 after being sued for breach of contract based on allegations that defendant RUDERMAN had traded securities owned by the client without the client's authorization, resulting in a loss to the client of over $500,000.

7.   Further to execute the scheme to defraud, defendant

7

RUDERMAN would make false and misleading representations and promises to the victim-investors for the purpose of lulling the victim-investors into believing that the money they had entrusted to him was safe and dissuading them from redeeming their investments.

III. THE EFFECT OF THE SCHEME TO DEFRAUD

    8.    Through the above-described scheme to defraud, defendant RUDERMAN induced at least 22 victim-investors to give approximately $44.3 million to him.

///

///

///

IV.  EXECUTIONS OF THE FRAUDULENT SCHEME

9.   On or about the dates set forth below, within the Central District of California, and elsewhere, defendant RUDERMAN, for the purpose of executing and attempting to execute the above-described scheme to defraud, willfully caused the following items to be transmitted by means of wire and radio communication in interstate commerce:

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| ONE | 1/20/09 | $500,000, invested by L. N. in RCP, wired from Goldman Sachs Execution & Clearing, LP account number 75VY through the Federal Reserve Bank of New York processing office in New Jersey, to RCP's City National Bank account number XXXXX2882 in Los Angeles California |
| TWO | 1/23/09 | $300,000, invested by A. A. in RCP, wired from Goldman Sachs Execution & Clearing, LP account number 75VY through the Federal Reserve Bank of New York processing office in New Jersey, to RCP's City National Bank account number XXXXX2882 in Los Angeles California |

///
///
///

9

COUNTS THREE AND FOUR

[15 U.S.C. § 80b-6(1), b-17]

10.    The United States Attorney repeats and realleges paragraphs one through eight of this information as if fully set forth herein.

11.    At all times pertinent to this information, in assisting members of RCP and RCP-A, defendant RUDERMAN through his alter-ego RCM served as an "investment adviser" within the meaning of Title 15, United States Code, Section 80b-2(11). While managing RCP and RCP-A, defendant RUDERMAN through his alter-ego RCM engaged in the business of advising others for compensation as to the value of securities and as to the advisability of investing in, purchasing and selling securities.

12.    Beginning on a date unknown but no later than in or about 2003 and continuing until at least April 15, 2009, in the Central District of California and elsewhere, defendant RUDERMAN, while acting as an investment adviser, knowingly and willfully, and with the intent to defraud, employed a device and scheme to defraud the members of RCP and RCP-A and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the members and prospective members of RCP and RCP-A. The manner and means by which this scheme was carried out are more fully described in paragraphs three through eight of this information.

13.    On or about the dates set forth below, in the Central District of California and elsewhere, defendant RUDERMAN, while serving as an investment adviser, and in furtherance of the above-described fraudulent scheme, directly and indirectly caused

10

the use of the means and instrumentalities of interstate commerce and the use of the mails in carrying out the aforementioned scheme to defraud, as follows:

| COUNT | DATE | VICTIM | ITEM MAILED |
|---|---|---|---|
| THREE | 3/24/09 | K. Family Trust | Statement of Income and Loss and Capital Account Statement for the period ending 12/31/2008 and IRS Schedule K-1 for 2008 sent by Federal Express to J.K., as trustee for K. Family Trust, in Los Angeles, California, from defendant RUDERMAN in Beverly Hills, California |
| FOUR | 3/24/09 | H. Family Trusts A and B | Statement of Income and Loss and Capital Account Statement for the period ending 12/31/2008 and IRS Schedule K-1 for 2008 sent by Federal Express to I.H., as trustee for H. Family Trusts A and B, in Northridge, California, from defendant RUDERMAN in Beverly Hills, California |

11

COUNT FIVE

[26 U.S.C. § 7203]

14.    During the calendar year 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendant RUDERMAN had and received a gross income of at least $2.072 million and was required by law, following the close of calendar year 2007 on or before October 15, 2008, to make an income tax return to the Director, Internal Revenue Service Center, at Fresno, California, or any other proper officer of the United States, stating specifically the items of his gross income and any deductions and credits to which he was entitled.    Knowing these facts, defendant RUDERMAN willfully failed to make an income tax return to said Director of the Internal Revenue Service Center, or to any other proper officer of the United States, within or at the time required by law and regulation, in violation of Title 18, United States Code, Section 7203.

THOMAS P. O'BRIEN
United States Attorney


CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division


DOUGLAS A. AXEL
Assistant United States Attorney
Chief, Major Frauds


RANEE A. KATZENSTEIN
Assistant United States Attorney
Deputy Chief, Major Frauds


CHERYL O'CONNOR MURPHY
Assistant United States Attorney
Major Frauds

12

**EXHIBIT B**
**FACTUAL BASIS**

A.    INTRODUCTION

    1.    From at least 2003 through at least April 15, 2009, defendant BRADLEY LEWIS RUDERMAN was a resident of Beverly Hills, California, within the Central District of California.

    2.    Defendant RUDERMAN was a registered representative of various securities brokerage firms from 1987 through 1998. Beginning in or about 2000, defendant RUDERMAN formed Ruderman Capital Management, LLC ("RCM") for the purpose of investing and managing his own funds and the funds of certain other investors. Defendant RUDERMAN was an owner and the manager of RCM, which functioned as his alter-ego.

    3.    Operating through RCM, defendant RUDERMAN engaged in the business of advising others as to the value of securities and the advisability of investing in, purchasing, and selling securities, and, for compensation and as part of a regular business, issued and promulgated analyses and reports concerning securities.  Defendant RUDERMAN provided investment advisor services to, among others, the hedge funds Ruderman Capital Partners, LLC ("RCP") and Ruderman Capital Partners A, LLC ("RCP-A") (hereinafter together "the Funds"), and the individual investors in the Funds.

B.    THE FRAUDULENT SCHEME

    4.    Beginning on a date unknown but no later than 2003, and continuing until at least April 15, 2009, within the Central

District of California and elsewhere, defendant RUDERMAN
knowingly and with the intent to defraud, devised, participated
in, and executed a scheme to defraud victims as to material
matters, and to obtain money and property from such victims by
means of material false and fraudulent pretenses,
representations, and promises, and the concealment of material
facts.

    5.   The scheme to defraud operated, in substance, in the
following manner and by the following means:

       a.   Defendant RUDERMAN formed RCP in or about 2003 and
RCP-A in or about 2005. Defendant RUDERMAN formed RCP for the
purpose of obtaining investments from third parties; RCP-A was
formed for the purpose of expanding the scope of potential
investors to include retirement funds. RCM was the Managing
Member and Investment Adviser of both RCP and RCP-A.

       b.   Defendant RUDERMAN solicited investments into RCP
and RCP-A from victim-investors. Defendant RUDERMAN represented
to victim-investors that their money would be invested to achieve
above average capital appreciation.

       c.   Defendant RUDERMAN did not invest all of the money
entrusted to him by victim-investors as he had promised to do.
Defendant Ruderman did place some of the funds he collected in
investments with the intent that he make money for his clients
with those investments. However, without informing the victim-
investors or obtaining their authorization, defendant RUDERMAN

used the victim-investor funds to make "interest" payments and returns of capital to other victim-investors; to fund cash disbursements to himself; to fund his gambling activities; and to pay his own personal expenses and obligations arising from other business activities.

    d.    Defendant RUDERMAN provided false and fraudulent account statements and *Partner's Share of Income, Deductions, Credits, etc.* ("IRS Schedule K-1s") to the victim-investors which purported to show gains in their investment accounts. Defendant Ruderman's purpose in preparing these false and fraudulent account statements and IRS Schedules K-1 was to prevent the victim-investors from discovering that defendant RUDERMAN was not investing their funds as he had promised. In addition, these documents had the effect of persuading the victim-investors to invest additional monies in the Funds, and encouraging the victim-investors to recommend the Funds to other potential investors.

    6.    To execute the scheme to defraud, defendant RUDERMAN made the following materially false representations and promises to victim-investors:

    a.    That all of the victim-investors' money would be invested in a diversified selection of equities.

    b.    That the Funds earned consistent yearly gains of between 15% and 61%.

    c.    That the Funds had between $67 million and $207

million worth of assets under management.

        d.   That the *Portfolio Analysis Reports* and *Annual Reports of Financial Condition* that defendant RUDERMAN prepared and sent to the victim-investors accurately reflected the true financial condition of RCP;

        e.   That the *Statements of Income and Loss; Capital Account Statements;* and IRS Schedules K-1 that defendant RUDERMAN prepared and sent to each victim-investor accurately reflected the true performance of each victim-investor's account;

        f.   That certain well-known financiers and entertainment industry executives had invested in the Funds;

        g.   That the financial statements of the Funds were audited by independent auditors, namely Rothstein Kass ("RKCO LLP"), which had conducted its audits in accordance with the standards of the Public Company Accounting Oversight Board.

        h.   That RCM's annual compensation for its investment adviser services would be limited to the following: (i) a management fee, to be paid by each investor and to be equal to 1% of the investors reported capital account balance as of the first day of the applicable fiscal year; and (ii) a performance-based incentive payment equal to 20% of the appreciation in the investor's capital account balance during the year, so long as the net capital appreciation in the investor's account met or exceeded 8% after the incentive payment for the year.

        7.   In truth and in fact, as defendant RUDERMAN then well

knew:

        a.    The victim-investors' money was not invested in a diversified selection of equities;

        b.    The Funds did not earn the consistent yearly gains of between 15% and 61% as defendant RUDERMAN claimed.  For example, in 2008 RCP had no gain whatsoever and, in fact, lost over $3 million;

        c.    The Funds did not have the amounts under management that defendant RUDERMAN claimed.  For example, at the end of 2008, the Funds had a net value of $588,246;

        d.    The *Portfolio Analysis Reports* and *Annual Reports of Financial Condition* that defendant RUDERMAN prepared and sent to the victim-investors did not accurately reflect the true financial condition of RCP;

        e.    The *Statements of Income and Loss; Capital Account Statements;* and IRS Schedules K-1 that defendant RUDERMAN prepared and sent to each victim-investor did not accurately reflect the true performance of each victim-investor's account; and the false IRS Schedules K-1 would result in the victim-investors paying taxes that they, in fact, did not owe;

        f.    The identified financiers and entertainment industry executives had not invested in the Funds;

        g.    The financial statements of the Funds had not been independently audited and defendant RUDERMAN had fabricated the Report of Independent Auditors included in the RCP Annual Report

of Financial Condition December 31, 2007, which was purportedly
prepared by RKCO LLP; and

h.   RCM's compensation for its investment adviser
services was not limited to an annual management fee and a
performance-based incentive payment.  In fact, defendant RUDERMAN
withdrew and took for himself monies from the Funds at any time
and in any amount he chose.

8.   Further to execute the scheme to defraud, defendant
RUDERMAN concealed the following material facts from the victim-
investors:

a.   Instead of investing the victim-investors' money as
promised, defendant RUDERMAN used the victim-investors' money to
make "interest" payments and returns of capital to other victim-
investors; to fund cash disbursements to himself; to fund his
gambling activities; and to pay his own personal expenses and
obligations arising from other business activities.

9.   Further to execute the scheme to defraud, defendant
RUDERMAN made false and misleading representations and promises
to the victim-investors for the purpose of lulling the victim-
investors into believing that the money they had entrusted to him
was safe and dissuading them from redeeming their investments.

C.   THE EFFECT OF THE SCHEME TO DEFRAUD

10.   Through the above-described scheme to defraud,
defendant RUDERMAN induced at least 22 victim-investors to give
approximately $44.3 million to him.  Of this amount,

approximately $19.2 million was distributed back to investors;
and approximately $9 million was taken by defendant RUDERMAN in
cash and to pay for personal expenses.

D.    WIRINGS

11.    On or about January 20, 2009, within the Central
District of California, and elsewhere, defendant RUDERMAN, for
the purpose of executing and attempting to execute the above-
described scheme to defraud, willfully caused $500,000, invested
by L.N. in RCP, to be wired from Goldman Sachs Execution &
Clearing, LP account number 75VY through the Federal Reserve Bank
of New York processing office in New Jersey, to RCP's City
National Bank account number XXXXX2882 in Los Angeles,
California.

12.    On or about January 23, 2009, within the Central
District of California, and elsewhere, defendant RUDERMAN, for
the purpose of executing and attempting to execute the above-
described scheme to defraud, willfully caused $300,000, invested
by A.A. in RCP, wired from Goldman Sachs Execution & Clearing, LP
account number 75VY through the Federal Reserve Bank of New York
processing office in New Jersey, to RCP's City National Bank
account number XXXXX2882 in Los Angeles California.

E.    USE OF INTERSTATE COMMERCE

13.    On or about March 24, 2009, in the Central District of
California and elsewhere, defendant RUDERMAN, while serving as an
investment adviser, and in furtherance of the above-described

fraudulent scheme, caused the transmission by Federal Express of a Statement of Income and Loss and Capital Account Statement for the period ending 12/31/2008 and IRS Schedule K-1 for 2008 to J.K. as trustee for K. Family Trust, in Los Angeles, California, from defendant RUDERMAN in Beverly Hills, California.

14. On or about March 24, 2009, in the Central District of California and elsewhere, defendant RUDERMAN, while serving as an investment adviser, and in furtherance of the above-described fraudulent scheme, caused the transmission by Federal Express of a Statement of Income and Loss and Capital Account Statement for the period ending 12/31/2008 and IRS Schedule K-1 for 2008 to I.H. as trustee for H. Family Trusts A and B, in Los Angeles, California, from defendant RUDERMAN in Beverly Hills, California.

F.    FAILURE TO FILE TAX RETURN

During the calendar year 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendant RUDERMAN had and received a gross income of at least $2.072 million and was required by law, following the close of calendar year 2007 on or before October 15, 2008, to make an income tax return to the Director, Internal Revenue Service Center, at Fresno, California, or any other proper officer of the United States, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Knowing these facts, defendant RUDERMAN willfully failed to make an income tax return to said Director of the Internal Revenue

Service Center, or to any other proper officer of the United States, within or at the time required by law and regulation.