# UNITED STATES v RUDERMAN
## CR 09-0757 SVW

## EXHIBIT 12

**DEPARTMENT OF CORRECTIONS**



David Chaney
Parole Agent II
Inglewood Five  7th Floor
101 North La Brea
Inglewood, CA  90301
(310)  330-5482

24 January, 2002

To Whom It May Concern,

I would like to introduce Bet Shuvah at 8831 Venice Blvd. as one of the premier
live-in drug abuse treatment facilities that I have worked with as a Parole
Agent.  Parole Agents are tasked with helping men and women on California
State Parole to locate and remain in drug and alcohol abuse treatment facilities.

Bet Shuvah has made itself available to six men and women I have worked with
regardless of their ability to pay.  I have worked with Bet Shuvah for over five
(5) years, both from my former position in the San Fernando Valley-North
Hollywood, and currently with the Inglewood office.

The men and women on parole have received quality housing, counseling,
encouragement, referral to outpatient and sober opportunities, and job
referrals.  Parolee's families have been encouraged to be a part of the process of
sobriety.

The staff at Bet Shuvah have been willing to work with and re-admit men and
women who have relapsed into drug and alcohol addiction.  The staff at Bet
Shuvah are always pleasant, helpful, and informative to me when I visit.

It is my pleasure to speak highly of this program.  I wish to add my voice to
their efforts to expand their services in the community.  If you have any
questions, then please write or call to the above.  Thank you.

Respectfully Submitted

David Chaney

Exhibit 12

UNITED STATES v RUDERMAN
CR 09-0757 SVW

EXHIBIT 13

## Monday

| | Men's Lounge | Sanctuary | Library | Board Room | Women's Lounge |
|---|---|---|---|---|---|
| 9am | L1-2 B / Adam | L3 / Kathy | House Jobs | L1-2 / Lisa | |
| 10am | ALL / Joan | House Jobs | | House Jobs | Body Image / Alyson (closed grp) |
| 11am | | L3 / Elaine | | | Parents |
| 12pm | | | L1-2 ALL / Kate | Cantor Rebekah | Women Parenting Grp |
| 1pm | | | | L3 / Francie | L1-2 / Shai |
| 2pm | ALL (Coed) Acupuncture | L1-2 & L3 / Rabbi Mark | | Staff Meeting | L1-2 Relapse Prevention |
| 3pm | | | | | |
| 4pm | | | | | ALL / Musar |

## Tuesday

| | Men's Lounge | Sanctuary | Library | Board Room | Women's Lounge |
|---|---|---|---|---|---|
| 9am | L1-2 ALL / Andrew | L3 / Rabbi Mark/Adam | House Jobs | | Irwin |
| 10am | House Jobs | House Jobs | House Jobs | | |
| 11am | L3 / Kelly | | | | L1-2 ALL / Sheri |
| 12pm | | L3 / Andrew | | Women / Sheri | Lisa Werner |
| 1pm | L1-2 ALL / Kelly | | | | Harold |
| 2pm | | | | | ALL (Coed) Machziz - SelfDefense |
| 3pm | ALL / CGA | | | | Lisa Rothenberg |
| 4pm | | | | | |

## Wednesday

| | Men's Lounge | Sanctuary | Library Anger Management | Board Room | Women's Lounge |
|---|---|---|---|---|---|
| 9am | L1-2 / Harold | L3 / Jason | Elaine / Art Therapy | Women / Art Therapy | |
| 10am | House Jobs | House Jobs | House Jobs | Men L1-2A, B | House Jobs |
| 11am | L1-2 A / Irwin | L3 / Elaine | | Mindfulness (closed group) | Lisa Werner |
| 12pm | | | | | Women |
| 1pm | L3 / Victoria | | | | Steve Music |
| 2pm | | | RECREATION (Men) | | L1-2 Women / Robin Steinberg & Andrew |
| 3pm | | | 4:30p House Mtg. | | |
| 4pm | | | | | |

## Thursday

| | Men's Lounge | Sanctuary | Library | Board Room | Women's Lounge |
|---|---|---|---|---|---|
| 9am | L1-2 ALL / Harrell & Shai | L3 / Adam | House Jobs | | Brandon |
| 10am | House Jobs | L1-2 ALL / Dov | House Jobs | Optional: Meditation in Andrew's Office | House Jobs |
| 11am | L1-2 B / Cantor Rebekah | L3 / Victoria | L1-2 B / Brandon | Women / Harriet | |
| 12pm | | | | | |
| 1pm | L3 / Adam & Rima | | | | Joslyn |
| 2pm | | | | Prevention | |
| 3pm | | L1-2 A / Benji | L3 / Irwin | | Narrative Therapy / Lauren Boasberg |
| 4pm | Pilates | | | | |

## Friday

| | Men's Lounge | Sanctuary | Library | Board Room | Women's Lounge |
|---|---|---|---|---|---|
| 9am | Men's Lounge | Sanctuary / Elaine | Library | Board Room | Women's Lounge |
| 10am | L1-2 All / Adam | House Jobs | House Jobs | | Kathy, Alyson & Dana |
| 11am | House Jobs | Shabbos Set-Up | House Jobs | | |
| 12pm | | Choir Practice / Laura Bajish | | | |
| 1pm | | | Women / Life Stories - Sara | | |
| 2pm | | | House Jobs | | |
| 3pm | ALL / Ethics | | | | |
| 4pm | | | | | |

## Saturday

| | |
|---|---|
| 9am | Alumni Speaker Meeting or outside meeting |
| 11am | Torah Service |

Exhibit

178

UNITED STATES v RUDERMAN
CR 09-0757 SVW

EXHIBIT 14



Nancy Mishkin
Chairman of the Board

Harriet Rossetto
Chief Executive Officer

Elaine Breslow
Administrative Director

Rabbi Mark Borovitz

Faina Geller
Chief Financial Officer

Warren Breslow
Chairman Emeritus

*BOARD MEMBERS*

Donald J. Berghoff
Lynn Bider
Emily Corleto
Jon Esformes
Mel Gagerman
Bob Gluckstein
Carolyn Gold
Beverly Gruber
Salli Harris
Dr. Susan Krevey
Diane Licht
Virginia Maas
Bradley H. Mindlin
Donald S. Passman
Prayer
J Prawer
Heidi Praw
Avi Reichental
Dr. Bill Resnick
David Ruderman
Richard Schulman
Annette Shapiro
Ronnie Stabler
Dr. Howard Wallach
Hal Wiseman

*HONORARY*
*BOARD MEMBERS*

Sheldon Appel
Blair Belcher
Robert Felixson
Herb Gelfand
Brindell Gottlieb
Shelley Kozek
Chuck Maltz
Cheri Morgan
Mike Nisserson
Jan Rosen
Craig Taubman
Greg Vilkin



THE
JEWISH
FEDERATION
*'nuvah is a constituent*
*f The Jewish Federation*

19 October 2009

The Honorable John F. Walter
United States District Judge
United States Court House
312 N. Spring Street
Los Angeles, CA 90012

Re: Brad Ruderman, Docket No. CR09-757-JFW

Dear Judge Walter,

This letter is being written to inform the Court and Counsel of the progress of Brad Ruderman while he has been a resident of the Beit T'Shuvah Residential Treatment Program. In addition, this letter hopes to serve as a basis for our assessment that Brad can benefit from a lengthy grant of probation in lieu of federal prison time, pending completion of substantial and additional time as a resident of Beit T'Shuvah.

Beit T'Shuvah was established in 1986 as a response for the need to assist Jewish men and women who had lost their moral, ethical, and spiritual compasses. For the past 23 years Beit T'Shuvah has been assisting the Criminal Justice System by providing forensic counseling, rehabilitation, and evaluation services to legal offenders of the Jewish faith. We have frequently provided alternatives to incarceration, when appropriate, that meets both the protective needs of society and the rehabilitative needs of the offender.

Beit T'Shuvah is a long-term residential facility. It is a structured environment that combines group and individual therapy, 12-step recovery participation, and Judaism to facilitate abstinence from a variety of addictive, compulsive, and criminal behaviors. We provide a range of services that includes substance abuse and compulsive gambling treatment, criminal offender rehabilitation, psychological assessment and counseling, vocational rehabilitation, and spiritual counseling. Our primary purpose is to assist Jewish criminal offenders in reestablishing themselves as productive and proactive members of society.

Residents are under 24-hour supervision, and for a minimum of 90 days that an individual is in the program they do not leave the facility unsupervised. After the initial restriction period, residents are gradually given more responsibility and freedom based on their progress in the program. Residents can remain at Beit

1

Exhibit 14



**Beit T'Shuvah**

T'Shuvah for a period of one year or more, and they are tested regularly for the presence of drugs and alcohol. Additionally, it is Beit T'Shuvah policy to notify the Court and/or probation immediately upon any violations of program rules or requirements. We also provide progress reports to the Court, as requested, and we are able to modify program parameters for specific defendants as mandated by the Court.

Prior to Brad coming forward regarding the financial crimes he is currently being prosecuted for, on April 23rd of this year, he met with our rabbi and the spiritual leader of our community, Rabbi Mark Borovitz. Brad came seeking help for the out of control spiral that his compulsive gambling had initiated and fed, and although Brad had difficulty on that day fully revealing just how dark and destructive his behaviors had become, it was to be the first step in recovery for him. Brad left the meeting with Rabbi Borovitz with the realization that, not only did he need help for compulsive gambling, but also that he did not want to continue on the path he had been on for many years. And, although Brad describes feeling genuinely suicidal after his meeting with Rabbi Borovitz, he was able to find some hope in the possibility of recovery. This hope evolved into the realization, on Brad's part, that he had to come forward regarding the mess he had made of his business affairs. This same hope is also what prompted Brad to enter our program as a resident on April 28th, one day after he acknowledged to his attorney, and his family, that he had taken actions as regards his business dealings, that were not ethical, nor legal.

Brad has traveled a remarkable distance since he initially entered Beit T'Shuvah. I would describe my initial interaction with Brad as one of meeting with someone who seemed like a deer caught in the headlights of an oncoming car. My early observations and encounters with Brad revealed him to be quiet and very tentative as regards his participation in the group and therapeutic process. He was clearly uncomfortable with having to face the events that had led to his landing in a rehabilitation facility, and he struggled to find his place among peers who were, primarily, substance abusers.

In a recent discussion with Brad, he spoke about his initial experience at Beit T'Shuvah. He spoke of being resistant to the idea that he could identify with the other residents, and of being caught in a mindset of thinking he had nothing in common with them. Brad related to me in this conversation that he was, "so narcissistic and self-involved" at that time, that rather than find the similarities between himself and the other residents, he kept seeking out the differences. Hard as he might try, however, he was relatively quickly forced to realize the

Exhibit 14
2



**Beit T'Shuvah**

similarities. Brad began to realize that not only does compulsive gambling emanate from the same spiritual malaise and emotional deficits as other addictive behaviors, but also that similar to any drug addict or alcoholic who is at Beit T'Shuvah seeking a new way to live, he had come to our doorstep, "spiritually, morally, and ethically bankrupt." In essence, even though Brad arrived at Beit T'Shuvah for different reasons than many of our residents, he soon began to see how his experiences in the realm of compulsive gambling were not unlike the experiences of those whose lives had been destroyed by substance abuse.

Once Brad came to the realization that his journey was not unlike those of his peers, he began to immerse himself in the program. His participation in the group process demonstrated insight and the willingness to be wholly transparent and rigorously honest. He began immediately to avail himself of the myriad of tools available at Beit T'Shuvah, in an effort to learn about himself and about how the disease of addiction manifested in his life experience. This meant, in Brad's own words, "having to face some awful truths about myself." Brad began participating in Gambler's Anonymous (GA) 12-step programming, as well as in Alcoholics Anonymous (AA). Brad also connected with the Judaic part of the Beit T'Shuvah program and, today, is living a life that is based in the Judaic traditions of decency, reflection, and service to others.

Brad's primary addictive behavior, and what fueled the financial crimes he engaged in, is compulsive gambling. Addiction can take many forms including substance abuse, alcoholism, compulsive gambling, sex addiction, eating disorders, destructive relationships, and the obsessive pursuit of money or material well-being. In its broadest sense, addiction is dependency on people, places, or things to "fix" a sense of brokenness. The addict seeks external solutions, or "fixes," to satisfy an inner yearning for wholeness, yet these "fixes" ultimately fail to provide any sense of comfort or completeness. My discussions with Brad reveal that he has indeed struggled with what all addicts struggle with: the obsessive pursuit of something—anything—that will give the illusion of feeling okay. Specific to gambling addiction, Brad had internalized society's message that self worth is measured in terms of net worth, and he addictively pursued the substance—in this case money and material well-being—that he believed would make him feel whole.

The addictive gambling process releases endorphins and dopamine in the brain similar to chemical addiction. Dr. Robert Custer, in his book <u>When Luck Runs Out</u>, compares the effects of alcohol and gambling, and finds that they are practically identical as psychic anesthetizers. Both provide relief from psychic

3.

Exhibit 14



**Beit T'Shuvah**

distress including feelings of anxiety, depression, anger, loneliness, emptiness, boredom, worry, and hopelessness. They are euphorants, producing feelings of well-being, pleasure and excitement.

As described in the DSM 4-R, pathological gambling is a disorder of impulse control that is characterized by the failure to resist an impulse, drive, or temptation to perform some act that is harmful to the individual or others. The individual engaged in the act of compulsive gambling experiences pleasure, gratification, or release at the time of committing the act and it is often followed by genuine regret, self-reproach, or guilt. There is a tendency to compromise family, personal, and vocational pursuits as indicated by strained relationships, tardiness or absenteeism from work, and/or any of a number of financial stressors including, but not limited to, the commission of crimes such as forgery, fraud, or embezzlement.

As with chemical dependency, active participation in a treatment program helps the compulsive gambler to address the issues underlying the addiction. The recovering addict, (whether the addiction is to alcohol, drugs, gambling, or sex,) becomes a person, in program life, who accepts responsibility for their life and makes choices that are based on consequences rather than impulses. Beit T'Shuvah has been working with compulsive gamblers for the 23 years that it has been in existence. Many of these individuals were sentenced to our program as an alternative to incarceration. Their crimes were embezzlement, credit card fraud, check fraud, and other money crimes. The majority of those who were alternatively sentenced were required to make restitution, and most of these clients have made complete restitution while abstaining from gambling and from further criminal activity.

Currently, Brad is a level three resident, which is a clear indication of the distance he has traveled since he first walked through the doors of Beit T'Shuvah. Brad actively participates in the Judaic component of our program, and he has proven himself to be someone who is dedicated to applying the Jewish spiritual tenets that are taught at Beit T'Shuvah in his daily actions. In the realm of group and individual therapy participation, Brad has demonstrated the ability, and the willingness, to confront his demons head on. Brad is also engaged in 12-step participation, attending meetings of both GA and AA, and working the steps of the GA program with a sponsor in that program. His immersion in the GA program is helping him to confront his primary addiction of compulsive gambling, while his participation in AA has helped Brad to admit and confront issues with alcohol that were concomitant to his gambling addiction.

Exhibit 14



An additional, and pivotal, experience for Brad was his realization that his criminal actions were an issue in and of themselves. This realization was based on his introduction to the relatively new and innovative 12-step program of Criminals and Gangmembers Anonymous (CGA). CGA was founded in 1996 by a group of inmates serving life sentences at Mule Creek State Prison. CGA meetings were initiated at Mule Creek with the support of interdenominational clergy that included Rabbi Borovitz, who subsequently integrated CGA into the program structure at Beit T'Shuvah.

The 12-steps of the CGA program are adapted from the anonymous programs model, and deal exclusively with compulsive criminality. CGA teaches that the individual must take responsibility for one's actions and the harm that their criminal behavior has caused; and that it is imperative to make amends for that harm. The CGA steps also guide the individual to confront the character traits that underlie their criminal behavior.

It was suggested to Brad early on in his residence at Beit T'Shuvah that, in addition to working the GA steps, he might also benefit from working the CGA steps. Brad enthusiastically took on the challenge of working another set of steps, with the outcome being that he has been able to delve even deeper into self-analysis and introspection regarding the character traits that were at the root of his antisocial behaviors. Brad can probably describe his experience better than I, but it is clear that Brad's experience in working the CGA steps has been transformative. Ultimately, Brad has become an example of CGA recovery through taking responsibility for his criminal behavior and in transforming his belief system, values, and attitudes from one of denial of the reality of the harm caused to society by his actions, to being accountable for his actions. His honesty on these issues is a very real example of growth and transformation—growth that serves as an example and inspiration for the men and women at Beit T'Shuvah, as well as for those who we hope will seek recovery through the program of CGA outside of Beit T'Shuvah.

CGA meetings are currently held at numerous California state prisons, and it has been Beit T'Shuvah's goal for a number of years to help "grow" the CGA program outside of prison walls. There is a core group of Beit T'Shuvah residents and alumni who have connected to the CGA message, and who are dedicated to assisting us in this mission. Brad is a member of this core group and has taken a leadership role in CGA at Beit T'Shuvah, as well as in helping to facilitate the growth of CGA outside of the institutional setting.

Exhibit 14



**Beit T'Shuvah**

Brad is the secretary of our weekly CGA 12-step meeting, and he co-facilitates a CGA book study group for our residents. He is a guiding force in carrying the CGA message to newer residents in the Beit T'Shuvah community, serving as both role model and teacher of the benefits of choosing a lifestyle that places spiritual well being over the pursuit of the material and egocentric goals that are the hallmark of the criminal lifestyle. Brad has also shared his experience in the realm of what CGA calls "lifestyle addiction," and his experience in recovery from the lifestyle addiction, not only with our residents at Beit T'Shuvah, but also through his participation in a CGA panel that we facilitate at the Tarzana Treatment Center Youth Services Program each week.

In addition to Brad's service work on behalf of CGA, he has been of service to others, and to our community, in a myriad of ways and settings. Brad was a key contributor to starting a new Gamblers Anonymous meeting at Beit T'Shuvah. This meeting has added a much needed component to our program in that it has been of tremendous help to a sizeable group of residents in our community who have also struggled with addictive gambling. Our GA meeting has also grown to include many active GA members from the outside community, having been planned to respond to the need for Sunday night GA meeting in the West Los Angeles area.

Brad has also shared his experience, strength, and hope with young people in the outside Jewish community, through his participation in our prevention program, Partners in Prevention. Partners in Prevention utilizes the path of Judaism to promote self-acceptance, self-worth, spiritual values and family harmony. It strives to teach young people how to proactively confront the difficult issues encountered in adolescence, as well as to convey esteem-building concepts and methods of personal problem-solving that help teens live and grow in a manner that promotes emotional health and success. The program is designed to encourage honest discussion about life's pressures and the relentless pursuit of perfection, which has become a cultural standard. Brad is uniquely qualified to carry the prevention message, because of the fact that his experiences as a young person were, in fact, based in a fear that he couldn't "measure up," and because his particular addiction had much of its basis in this "relentless pursuit of perfection."

Brad is also currently serving as an intern in our Career Center, which assists our residents in preparing for employment once they have reached the appropriate stage in the program. He has been able to use his experience and expertise in the

6



**Beit T'Shuvah**

business world to help our residents create resumes, prepare for interviews, and to help them with appropriate follow-up as they tackle the job search process. This process is often fraught with trepidation and fear on the part of our residents, and Brad has been a guiding force in easing the stress of this process, as well as in offering support as our residents make the transition to full time employment. In all reality, I am not sure who benefits more from Brad's contribution to the vocational rehabilitation process. There is no doubt that Brad's influence upon his peers is meaningful and helpful, yet I can also see where his service work in all areas has benefited him in ways that are beyond measure. There is a recovery based truism that states, "Estimable acts create self-esteem." The pride that Brad takes in his ability, through his experiences both negative and positive, to help others is, indeed, helping him to become a better person.

Additional avenues through which Brad has been of service include his one-on-one training of residents who are seeking, as a component of their recovery, to improve their lives through better physical fitness. In addition, he has recently started and leads a "runners group," of which the focus is to firstly, improve participants' awareness of the role physical fitness plays in recovery and, secondly, to train residents who hope to participate in the Los Angeles Marathon to help raise funds that will allow Beit T'Shuvah to continue to offer services to individuals who struggle with addiction. Brad has also returned to college to pursue his CAADAC (California Association of Alcohol and Drug Abuse Counselors) certification, with the goal of further using his personal experience to help others who struggle with the disease of addiction. He is currently in his first semester at UCLA Extension.

In summary, I hope to highlight Brad's commitment to change, his willingness to wrestle with his demons, and the progress he has made in transforming negative behaviors into behaviors that are positive and proactive. Brad has most definitely demonstrated, through his actions, that he is internalizing the principles we hope to instill in our residents. It is also notable that, despite the fact that Brad is facing potentially long-term incarceration, he continues to move forward and to apply the principles of recovery in his life on a daily basis. In reality, it is these same principles—acceptance, surrender, and contrary action—that have allowed Brad to find purpose and meaning in his recovery despite facing a substantial amount of time in federal prison. And, it is these principles that have propelled Brad to a stage in his program where he has become a valuable and exemplar member of the Beit T'Shuvah community.

7


**Beit T'Shuvah**

Ultimately, I am requesting that the Court consider staying the federal prison sentence that is being sought in Brad's case. While we at Beit T'Shuvah do understand the value and necessity of incarceration when indicated, Brad's progress and commitment to his recovery, and his service to others, prompts me to request the opportunity to allow him to remain a member of the Beit T'Shuvah community, as opposed to interrupting his progress by mandating custody time. Not only will this allow Brad to continue to grow spiritually and emotionally through continued treatment and therapy, but we believe it will also benefit both the Beit T'Shuvah community and society as a whole because of the work he is engaged in to deter others from negative behavior. In essence, I believe the benefits to society if Brad is not incarcerated far outweigh the benefits to society if he is mandated to serve time in custody.

What I am suggesting, in lieu of federal custody time, is that Brad be sentenced to additional time at Beit T'Shuvah, during which time he will also be supervised by a federal probation officer. Brad can continue to pursue his educational goals and he can continue to carry the message of recovery and redemption to individuals who are at risk to offend and/or re-offend. Beit T'Shuvah, in conjunction with the supervising probation officer, will continue to monitor Brad through drug testing and oversight of his activities. We will provide progress reports as deemed appropriate by the Court and/or the probation officer.

Beit T'Shuvah has worked closely with the courts for the past 23 years in establishing viable alternatives to incarceration, and has had considerable success at halting the "revolving door" syndrome of its alternatively sentenced clients. Incarceration alone is not effective in preventing the offender from re-offending. Our goal is to assist the offender in identifying the behaviors that cause him to "act out," desist from these actions, and fashion a new way of life that is decent, moral and ethical.

Your Honor, the foundation of the Beit T'Shuvah program is the Jewish spiritual principle of "T'Shuvah." T'Shuvah is the action, in Jewish spiritual life, through which an individual makes amends for any harm he has caused. T'Shuvah is not simply saying, "I'm sorry," for negative and harmful behaviors," nor is it solely making financial restitution. It is both of these actions and more. T'Shuvah requires that an individual make a living amends through striving to live with integrity and morals, and it also requires that an individual have a plan to not repeat the behavior that created the harm. I believe that Brad Ruderman has demonstrated that he is committed to making T'Shuvah through his service to others, his willingness to confront his past behaviors, and his commitment to

8



**Beit T'Shuvah**

living ethically. And, I believe that we will have done much to repair the torn fabric of the world should you find it suitable to allow Brad to continue his work at Beit T'Shuvah.

In closing, I will simply add that Brad Ruderman is not the same young man who was admitted to Beit T'Shuvah in April of 2009. He has worked diligently to transform himself into a sober and responsible member of society and he is truly living a life that is based in the principles of honesty, decency, and service.

Should you have further questions or concerns, I am present in court today to answer any questions you may have.

Respectfully Submitted,

Carol A. Newman
Alternative Sentencing Coordinator

9

Residential Treatment and Prevention Center / 8831 Venice Blvd., Los Angeles, CA 90034 . Ph 310.204.5200 . Fax 310.204.8908 . Email info@beittshuvahla.org

# UNITED STATES v RUDERMAN
## CR 09-0757 SVW

## EXHIBIT 15

# FLORATOS, LOLL & DEVINE
### A PROFESSIONAL LAW CORPORATION

TELEPHONE (714) 641-1222

**6 HUTTON CENTRE**
**SUITE 1000**
**SANTA ANA, CALIFORNIA 92707-7706**

FACSIMILE (714) 641-1333

April 15, 2009

Members of Ruderman Capital Partners, LLC
9440 Santa Monica Blvd., Ste. 600
Beverly Hills, CA 90210

Re: Ruderman Capital Partners, LLC

Dear Members:

This office represents Brad Ruderman, the current Manager of Ruderman Capital Partners, LLC. It is our understanding that you are a member of Ruderman Capital Partners, LLC.

We are informed that due to the severe downturn in the stock market and in the overall economy, that there is currently very little value in the assets held by the LLC. Mr. Ruderman is currently compiling an accounting for the Members which will identify the assets remaining of the LLC, and will also identify the income and expenses of the LLC. Mr. Ruderman has informed us that he will complete that accounting for its distribution fourteen (14) days from the date of this letter.

Mr. Ruderman will, at the request of the other members, resign as Manager or work with a newly-elected Co-Manager with regard to the winding down of the LLC according to the wishes of the other Members.

Mr. Ruderman has indicated that he will not spend any further funds of the LLC and would be willing to put the assets of the LLC under the control of any new Manager or a Member's Committee properly elected and identified pursuant to the Operating Agreement.

Mr. Ruderman greatly regrets the economic losses suffered by the Members, but he is confident once the Members have had a chance to review the above-referenced accounting, they will be satisfied he did not use these funds for his own enrichment.

As Mr. Ruderman wishes to make sure that no single Member receives information to the advantage or disadvantage of any other Member, all inquiries and/or responses to this letter should be directed to this office.

Exhibit 15

**FLORATOS, LOLL & DEVINE**
A PROFESSIONAL LAW CORPORATION

Members of Ruderman Capital Partners, LLC
April 15, 2009
Page 2

We will expect shortly after the accounting is distributed, that the Members will wish to call a meeting of the LLC to discuss the winding down of the LLC and distribution of the remaining assets.

Since this office represents Mr. Ruderman individually, should the Members wish to engage counsel to represent the LLC with regard to any future meeting or winding down of the LLC, Mr. Ruderman will not participate in selection of that counsel.

Once we have received the accounting referenced above, we will distribute it to all Members at the same time by U.S. Mail First Class.

Very truly yours,

FLORATOS, LOLL & DEVINE
A Professional Law Corporation

William A. Floratos, Esq.

WAF:cab

Exhibit 15

# UNITED STATES v RUDERMAN
## CR 09-0757 SVW

## EXHIBIT 20



# CALIFORNIA CHRONICLE

Tuesday, November 10, 2009 11:33:30 AM

## William "Boots" Del Biaggio Sentenced to 97 Months' Imprisonment for Securities Fraud

*September 18, 2009*                                                                           *Crime Blotter*

SAN FRANCISCO—William J. "Boots" Del Biaggio was sentenced today to 97 months in prison and ordered to pay approximately $67.5 million in restitution for his role in a $100 million fraud scheme, United States Attorney Joseph P. Russoniello announced.

"I would hope this sentence and those imposed by the courts in other recently publicized investment fraud cases will make it clear that the federal government will prosecute to the fullest extent permitted by law those who defraud their investors, in particular, and perpetrate a fraud on the market, in general," Russoniello said. "Mr. Del Biaggio caused substantial harm to his victims, in some cases jeopardizing their future financial sustainability. The sentence imposed should be a warning to others that the prospect of easy profits is not worth the risk of loss and shame that detection and prosecution is certain to bring."

Del Biaggio, 42, of San Jose, Calif., was charged by Information of one count of securities fraud on Dec. 4, 2008. He pleaded guilty on Feb. 4, 2009. According to the plea agreement, Del Biaggio admitted to using doctored brokerage statements to defraud banks and other lenders to obtain or renew approximately $100 million in loans. He also admitted to his role in the misappropriation of investors' funds in three investment funds at which he was a principal: Sand Hill Capital Partners III; BDB Management, LLC; and BDB Management III. For his conduct related to these investment firms Del Biaggio agreed to pay approximately $19.9 million in restitution.

According to court documents, Del Biaggio's actions related to the charged, fraudulent scheme ultimately caused $47 million in losses. His conduct related to the investment funds affected more than 75 investors—some lost their savings. Several of the victims spoke of their loss at the sentencing.

The sentence was handed down by U.S. District Court Judge Charles R. Breyer. Judge Breyer also sentenced the defendant to a three year period of supervised release, and ordered him to pay a $100 special assessment. Del Biaggio who is out on bond is scheduled to self surrender on Jan. 8, 2010.

Del Biaggio's co-defendant, Scott Cacchione, is scheduled to be sentenced on Sept. 29.

Jonathan Schmidt is the Assistant U.S. Attorney who is prosecuting the case with the assistance of Rayneisha Booth. The prosecution is the result of a lengthy investigation by the FBI.

Further Information:

Case #: CR 08-0874-CRB

The American Chronicle, California Chronicle, Los Angeles Chronicle, World Sentinel, and affiliates are online magazines for national, international, state, and local news. We also provide opinion and feature articles. We have over 5,000 contributors, over 100,000 articles, and over 11 million visitors annually.

*This website and its affiliates have no responsibility for the views, opinions and information communicated here. The contributor(s) and news providers are fully responsible for their content. In addition, the views and opinions expressed here are not necessarily those of the American Chronicle or its affiliates. All services and information provided on this website are provided as general information only. Any medical advice, home remedies and all other*

Exhibit 20

medical information on this website should not be treated as a substitute for the medical advice of your own doctor. We are not responsible for any diagnosis of treatment made by anyone based on any of the content of this website. Always consult your own doctor if you are in any way concerned about your health.

Copyright 2008 Ultio, LLC. Powered by Boxkite Media.

Exhibit 20

Venture Capitalist Pleads Guilty - Securities Fraud - Bits Blog - NYTimes.com

The New York Times

# Bits

**Business ▪ Innovation ▪ Technology ▪ Society**

FEBRUARY 5, 2009, 7:24 PM

## Venture Capitalist Pleads Guilty to Securities Fraud

*By CLAIRE CAIN MILLER*

**UPDATED 2/6/09 1:15 p.m.:** *Added details from the plea agreement and clarified the relationship between Sand Hill Capital and Sand Hill Capital Partners III.*

Much of the country is abuzz over the newly released list of people who invested with Bernard L. Madoff, who has been accused of running a $50 billion Ponzi scheme.

In Silicon Valley, another Ponzi scheme is making news — that of William "Boots" Del Biaggio III, who pleaded guilty Wednesday to securities fraud.

William "Boots" Del Biaggio. (Credit: Rick E. Martin/San Jose Mercury News, via Associated Press)

In December, Mr. Del Biaggio, a former Silicon Valley venture capitalist and part-owner of the Nashville Predators hockey team, was accused by the Securities and Exchange Commission and federal prosecutors of securities fraud.

On Wednesday, Mr. Del Biaggio pleaded guilty to the criminal charge, which accused him of falsifying documents to obtain $100 million in fraudulent loans. In a plea agreement, he also said that he misused $19.9 million of investors' money in three of his investment funds, including for personal use. He agreed to pay restitution to these investors, the United States Attorney's Office for the Northern District of California said in an announcement Thursday.

"I knowingly and intentionally executed this scheme and artifice with the intent to defraud another person," said the plea agreement filed Feb. 4 in United States District Court in San Francisco and signed by Mr. Del Biaggio. Doctored brokerage statements "materially misrepresented my true financial condition," it said.

In a statement, United States Attorney Joseph P. Russoniello said: "Those who defraud lenders and investors must be held to account for their misdeeds, which often have a devastating financial impact on their victims."

The S.E.C. investigation is continuing, said Jina Choi, branch chief in the enforcement division of the S.E.C.'s San Francisco office.

Mr. Del Biaggio will be sentenced June 10 and faces a maximum of 25 years in prison, though his plea agreement called for him to be imprisoned for six and a half to eight years.

**Exhibit 20**

An investor of Mr. Del Biaggio's testified at the hearing that he worried Mr. Del Biaggio might not have enough money to repay his victims. The San Jose Mercury News reported that though he reported assets of $53.9 million when he filed for bankruptcy protection, recent filings show that he might have been worth much less. For example, the paper said, Mr. Del Biaggio said he owned shares in a Chinese company worth $12 million when in reality they sold for $196,410.

In the complaint filed Dec. 4 in United States District Court in San Francisco charging Mr. Del Biaggio with one count of securities fraud, the United States attorney charged that Mr. Del Biaggio "did knowingly and intentionally devise a scheme and artifice to defraud lenders." He falsified other people's brokerage account statements to make it appear that he held securities he did not and used these statements as collateral to take out loans, the complaint said.

The S.E.C. complaint said that he also set up a Ponzi scheme to mislead investors into giving him money. Dozens of people invested more than $10 million in Sand Hill Capital Partners III, an investment fund Mr. Del Biaggio formed, according to the S.E.C. complaint. He guaranteed them a 12 percent rate of return on their investment and "for several years, Del Biaggio paid clients their regular interest payments, often with funds raised from more recent clients," the complaint said.

Sand Hill Capital Partners III was separate from Sand Hill Capital, the venture debt firm Mr. Del Biaggio founded in Menlo Park, Calif., which is still operating. He resigned last spring. Sand Hill Capital is not implicated in the alleged Ponzi scheme, and investigators said that he used the words "Sand Hill" in the names of his fraudulent funds to mislead investors into thinking they were affiliated with the legitimate investment firm.

Mr. Del Biaggio also used some of the money to pay off gambling debts, pay for and decorate his lavish San Jose home and buy a $25 million stake in the Nashville Predators, said Michael Dicke, associate regional director in the S.E.C.'s San Francisco office.

In May, Mr. Del Biaggio, who had had previous run-ins with the law, resigned as a general partner of Sand Hill Capital. In June, he filed for bankruptcy protection.

Elliot Peters, Mr. Del Biaggio's lawyer, did not respond to a request for comment after his client's guilty plea but said Dec. 9 that Mr. Del Biaggio filed for bankruptcy protection "so that there would be an orderly process to try and repay creditors." Mr. Peters, who is a partner at Keker & Van Nest in San Francisco, said, "Boots Del Biaggio wants to do everything he can to make things right."

Copyright 2009 The New York Times Company | Privacy Policy | NYTimes.com 620 Eighth Avenue New York, NY 10018

Exhibit 20

Members: Log in | Not Registered? Register for free extra services.

San Francisco Business Times - September 8, 2009
/sanfrancisco/stories/2009/09/07/daily19.html

# SAN FRANCISCO
# Business Times

Tuesday, September 8, 2009

# VC gets 8 year sentence, must pay $67.4M

San Francisco Business Times

Venture capitalist and former co-owner of the **San Jose Sharks**, William "Boots" Del Biaggio III, has been sentenced to eight years in prison and more than $67.4 million in restitution for misappropriating funds from individual investors he advised.



View Larger

Del Biaggio was charged with cheating investors of about $100 million, and investigators said he falsified documents so it would look like he owned securities that belonged to others.

In February, Del Biaggio pleaded guilty to charges that he used the money to pay off gambling debts and live lavishly, including buying a stake in the **Nashville Predators** NHL team.

Del Biaggio, who with his father also co-founded San Jose's **Heritage Bank of Commerce** in the 1990s, agreed in December to a settlement over a separate civil suit filed by the Securities and Exchange Commission.

According to the SEC complaint, Del Biaggio fraudulently pledged securities owned by innocent customers of a San Francisco-based broker dealer as collateral for more than $45 million in personal loans.

Beginning in August 2007, Del Biaggio obtained brokerage account statements of unknowing customers with the help of a friend who was a managing director at San Francisco-based Merriman Curhan Ford, and then falsified the account statements to make it appear that Del Biaggio owned the assets in the accounts.

Last month, in an announcement related to Del Biaggio, Merriman Curhan Ford said it will settle $43.5 million in "previously disclosed civil legal claims that resulted from the unethical conduct of a rogue retail broker in 2008."

The complaint also said Del Biaggio misappropriated more than $19 million from individual investors he advised. Between 2003 and 2008, Del Biaggio "used his reputation as a prominent venture capitalist and role as the founder and CEO of established venture firm **Sand Hill Capital L.P.** to entice dozens of his advisory clients to invest in three investment funds he formed," the SEC claims.

In June 2008 Del Biaggio filed a bankruptcy filing showing he owed about $35 million more than he had in assets.

The San Jose financier said he had assets of $53.9 million and $88.4 million in liabilities. The biggest asset listed was his stake in the Nashville Predators hockey team, valued at $23.5 million.

He also listed four homes — two in San Jose, one in Santa Monica and one at Squaw Creek resort — worth a total of $12.1 million but with $8.6 million in outstanding mortgages.

Among the largest debts listed by Del Biaggio are $7 million to sports firm AEG Facilities; $10 million to the former Predators owner Craig Leipold and $3 million to the nonprofit **Martha E. San Filippo Foundation** in San Jose.

*Silicon Valley/San Jose Business Journal*

*All contents of this site © American City Business Journals Inc. All rights reserved.*

# Exhibit 20