UNITED STATES v RUDERMAN
CR 09-0757 SVW


EXHIBIT 36

November 18, 2009

Dear Hon. John F. Walter,

    I am writing regarding Brad Ruderman, a man with whom I have been very dear friends for almost four years. It is my understanding that he has an upcoming sentencing date, and for that reason, I felt it appropriate to write to you, in hopes of giving you a more complete picture of the type of person that Brad is, and in turn, urging you to impose a lenient sentence.

    I, myself, am also a member of the California Bar and have been practicing criminal defense law as a Public Defender in Los Angeles County for over three years. As I'm sure you are aware, I deal, on a daily basis, with clients who are facing jail or prison time or, in the alternative, are currently incarcerated. In other words, I am familiar with the system, the types of people who are lost in it, and the types that shouldn't be. Brad, in my opinion, falls into the latter category.

    Brad has always been an incredibly caring, open minded, generous, and patient friend to me. He has welcomed me into his family, invited me to holiday services and meals, and has always been present when I've needed him. Although I haven't spent an enormous amount of time with him, the time that we do spend together always leaves me with a sense of calm and unquestionable knowledge that I have a fan, a supporter, and for lack of better terminology, someone behind me. He's the type of man who makes a person feel safe and cared for.

    About six months ago I was made aware that Brad was entering rehabilitation for gambling. I didn't know any of the details at that time, nor did I speculate, but I was quite sure that if Brad was entering rehabilitation, something must have gone horribly wrong. Since then, I have seen and spoken to Brad and he has brought me up to speed. He enumerated his series of mistakes and braved my possible ridicule. He told me about his choice to come forward, and his willingness to face the consequences. He told me about the friends and family he has lost and those who

Exhibit 36

have come out of the woodwork to support him. Most importantly, he has made it clear that regardless of what happens, he is going to lead a much different type of life when this is over than he previously did; one that does not involve valuing oneself by material wealth and possessions; a life, due to his upbringing, he never knew he had the luxury of living.

After first hearing the details of the situation, of course, I was shocked. I couldn't believe that someone who, in my eyes, had it so "together," had fallen apart. I couldn't grasp the idea that a person who made me feel so sheltered could be without a roof over his own head. I couldn't believe that Brad, someone I held in such high esteem, for whatever that's worth, had dug himself a hole, out of which he could not climb. I couldn't believe he was actually a selfish person. I guess I just couldn't believe that he was capable of lying to people about whom he cared, only to feed his habit and his lifestyle. I've had a lot of time to think about all of this however, and I think the answer is that he *couldn't.* He wasn't and isn't capable of lying to those people, or selfishly bettering his situation at their expense. Doing those type of things was destroying him. How do I know this? With the benefit of hindsight, I realize now that Brad was constantly anxious and distracted. He couldn't settled down and enjoy a moment without purposeful distraction. He loathed silence because, presumably, it caused him to face his own thoughts and acknowledge how shameful he felt. He couldn't engage in meaningful relationships because the closer he would get to someone, the nearer the possibility of that person finding out what he was doing. Brad wasn't scared of being found out, but rather, was so ashamed of himself that he wouldn't really let anyone in. I wouldn't have realized any of these past behaviors had I not been witness to his rebirth.

The person that Brad is now, and who he has become in the last six to nine months, is entirely different. He is engaging, honest, calm, unpretentious, and relieved. He is appreciative and genuine and has absolutely nothing to prove. He is terrified, but doesn't regret coming clean. He would never trade all of his previous financial stability for this new person he has now enabled himself to become. Brad now feels pride when appropriate: when he helps a child with his 12 steps, for example, rather than when he buys a

Exhibit 36

new car. Brad now appreciates what matters: his friends and supporters, rather than the Laker's game. Although he has and will have significantly less material wealth, in his eyes, he now has and will have so much more of what actually matters. If that isn't a changed man, I don't know what is.

I guess the point is, your honor, that although Brad may have committed the acts in question, and did hurt many people along the way, he's already been punished. To see Brad now makes it crystal clear how tortured he was prior to turning himself in. He lived in a world of misery, despite his financial stability. He enjoyed absolutely nothing due to his constant mortification. It would seem that the many years of feeling like this was self imposed punishment and an indication of the type of person that Brad is not meant to be. Isn't what he's gone through, in light of turning himself in and the leaps and bounds he has come since then, enough for Brad? I submit to the court that it is.

I urge the court to trust in the progress that Brad has made and allow him to move forward rather than back. There is so much that he could contribute to our community at a time when it is in such need. Allow him to educate himself in a new field, help and counsel others less experienced and intelligent than him, and reintegrate himself into the world. I am confident, as you should be, that Brad will never make this mistake or a similar one, again. Not only will he not have the opportunity to, as he will no longer be in the business, but he wouldn't *want* to. The things he once desired and strived for, no longer matter, and the things that once didn't, do. He's a changed man, your honor; one who can make a difference. Please allow him to do so.

I sincerely appreciate your time and attention to this matter, and not only Brad, but I too respect whatever decision you deem appropriate.

Fondly,

Logan Weiss

Exhibit 36

# UNITED STATES v RUDERMAN
# CR 09-0757 SVW

# EXHIBIT 37



# Department of Justice

The United States Attorney's Office
Central District of California

United States Attorney's Office
Central District of California

Thom Mrozek
Public Affairs Officer

(213) 894-6947
thom.mrozek@usdoj.gov

September 17, 2007

**PRINCIPAL AT C+ CAPITAL MANAGEMENT SENTENCED TO OVER SEVEN YEARS FOR ORCHESTRATING $28 MILLION SCAM**

The owner and operator of the now-defunct downtown investment advisor firm C+ Capital Management, LLC was sentenced late this afternoon to 87 months in federal prison for bilking primarily Korean-American investors out of more than $28 million.

Won Charlie Yi, 47, of Los Angeles, was sentenced by United States District Judge A. Howard Matz, who also ordered Yi to pay $28.8 million in restitution to individual investors and $2.4 million to Wells Fargo Bank.

In December 2005, Yi pleaded guilty to four counts of bank fraud, 11 counts of mail fraud, two counts of investment advisor fraud and two counts of criminal forfeiture. Those charges relate to an investment scheme he operated through C+ Capital Management, which raised well in excess of $20 million by inducing members of the Korean-American community to invest funds with a promise of large returns. The investors were told that their money would be invested in accounts at a New York-based broker-dealer, Carlin Equities Corporation, which Yi and his associates said had a branch in Los Angeles. Yi and his associates told victims that their money would be invested in publicly-traded companies and Regulation S offerings. Investors were provided with fabricated monthly account statements showing gains in their accounts, and the victims could view the false account statements on an elaborate Internet site.

After it became clear in 2003 that investors were going to have difficulty withdrawing their funds from their investment accounts, Yi created a fictitious letter from the Internal Revenue Service, which suggested that funds placed through C+ Capital accounts were subject to an audit freeze while the IRS investigated possible violations of the law under the USA Patriot Act.

When he pleaded guilty, Yi admitted that the accounts were never opened at Carlin Equities. Instead, the investors' funds typically were deposited into bank accounts at Wells Fargo Bank controlled by Yi or his associates at C+ Capital. When investors sought to withdraw their investments, Yi and others at C+ Capital lulled the investors by giving them various reasons why their holdings could not or should not be immediately liquidated. Ultimately, they fled to Seoul. Before fleeing, Yi and an associate overdrew the Wells Fargo accounts by more than $2 million, which he caused to be wired to South Korean banks.

Yi was arrested in South Korea in April 2005 and was brought to the United States to face the charges in this case.

This case is the product of an investigation by the Federal Bureau of Investigation.

| FBI Home Page | Los Angeles Home Page | LA Press Releases | Privacy Policy |

Exhibit 37

# UNITED STATES v RUDERMAN
## CR 09-0757 SVW

# EXHIBIT 38

# NEWS RELEASE



## OFFICE OF THE UNITED STATES ATTORNEY
## SOUTHERN DISTRICT OF CALIFORNIA
San Diego, California

*United States Attorney*
*Karen P. Hewitt*

*For Further Information, Contact: Assistant U. S. Attorney Faith A. Devine (619) 557-7173*

*For Immediate Release*

### HEDGE FUND MANAGER SENTENCED TO 60 MONTHS

**NEWS RELEASE SUMMARY** - October 20, 2008

San Diego, CA - United States Attorney Karen Hewitt announced that Paul Henrie Levy was sentenced to serve 60 months in prison by United States District Court Judge Roger T. Benitez in connection with Levy's participation in a scheme to defraud investors in the Global Money Management (GMM) hedge fund out of approximately $49 million.

According to Assistant United States Attorney Faith Devine, who prosecuted the case, Levy was charged in an indictment with, among other things: diverting investor funds from the GMM hedge fund for his own personal benefit or entities that he controlled; disseminating false and misleading account statements and partnership tax returns that overstated the performance of the GMM hedge fund; using new GMM investor money to pay fictitious returns to old GMM investors in order to induce those investors to send money to GMM and/or not withdraw funds the investors had already invested; and failing to report the diverted investor funds on his tax returns.

Exhibit 38

On July 22, 2008, Levy pled guilty to one count of conspiracy to commit mail and wire fraud and to defraud the United States in violation of Title 18, United States Code, Section 371. Judge Benitez also ordered Levy to make restitution in an amount to be determined by the Court at a later date.

United States Attorney Hewitt said, "We are gratified that Levy will spend the next five years in prison for his crimes. He defrauded the Global Money Management hedge fund of millions of dollars and betrayed the trust of these investors; his conduct fully warranted the punishment he has received."

FBI Special Agent in Charge Keith Slotter commented, "Today's sentencing marks the end of one man's fraudulent and egregious criminal activity. Unfortunately, there are many more crooks preying on investors, but the FBI and our federal counterparts remain committed to protecting the American people from these types of schemes."

"Today's sentencing of Mr. Levy demonstrates to the public that IRS Criminal Investigation will continue to dedicate its financial expertise to pursuing individuals who prey on unwitting investors for their own financial gain," said Catherine D. Tucker, Acting Special Agent in Charge, IRS-Criminal Investigation, Los Angeles Field Office. "Our special agents are dedicated to aggressively working investor fraud investigations and ensuring the public's confidence in our tax system."

**DEFENDANT**        **Case Number: 05cr1010-BEN**

Paul Henrie Levy

**SUMMARY OF CHARGES**

Count 1: Conspiracy (Title 18, United States Code, Section 371)

**AGENCIES**

Federal Bureau of Investigation

Internal Revenue Service - Criminal Investigation

Exhibit 38

# UNITED STATES v RUDERMAN
# CR 09-0757 SVW

# EXHIBIT 39

December 8, 2009

Honorable John F. Walter,
United States District Court, Central District of California
312 N. Spring Street
Los Angeles, Ca 90012-4793

Dear Honorable. John F. Walter,

I am writing to you in regards to Bradley L. Ruderman and his upcoming sentencing date. I'm writing with the hope that you will give him a more lenient sentence and that I can explain to you the impact Brad has had on my life.

My name is Melissa Ruderman and Brad is my older brother. For the past five and half years I have been a successful music talent manager in the entertainment industry. I am over six and half years sober from drug addiction. Like so many others, I have made mistakes and through sobriety and extremely hard work I was able to turn my life around. I feel it's important to let you know just how much Brad means to me and the impact he played in my recovery. I've had a lot of struggles in my life and Brad was always there for me. In my darkest days, he showed up for me, when others did not. Whether it was therapy, advice or a shoulder to cry on, Brad was there.

The last two years have been very difficult in our family. We lost our mother to cancer after an eight-year long battle. Our mother was the matriarch of our family, our best friend, and our everything. Brad stepped again and helped me go through the pain of losing my mom.

This is so hard for me because Brad has always been my hero. There was big age difference between Brad and myself and my younger brother. I always remember we would joke and refer to Brad as the "golden child". I always wanted to be as smart as him, as respected as him, and as successful as him. I had no idea all the demons he was fighting.

In hindsight, I do look back and see that Brad really didn't live much of a life. He was very shut down; he was very anxious and never enjoyed any material possessions he had. He had no personal life and his life centered around only work and in later years his pokers games. Essentially, he was dead inside, with little, if any, spirituality.

Exhibit 39

At the end of last March 2009, Brad came to me and confessed what he had done. He was so ashamed of what he did and most importantly hurting family, friends and clients. These are people that loved him and trusted him and that he loved back. He dug such a hole for himself and he couldn't get out. No one suspected him of any crimes; he just couldn't live the lie. He then took steps to turn him in and confess his sins.

From that moment, he went straight into treatment at Beit TShuvah (BTS). It was then revealed that Brad has a serious gambling addiction. I can tell you as an alumni of BTS, Brad has had an amazing transformation. He is working hard on his 12 step program for gambling, he started the first Gamblers Anonymous meetings at BTS, and he is helping others and being of service. Brad is now running the career center there and helping kids with addiction find jobs. Brad has also made tremendous waves in his therapy to which I have been included, along with my family. I now see him smile, carry on a conversation and want to live a true and meaningful life.

Your honor, there is no debate that Brad should be sentenced, but I ask you to please consider what is the appropriate sentence? To me, Brad has much more value on the "outside" rather than on the "inside". Brad has not a violent bone in his body; to be sure, he has tortured and punished himself for years. In all our conversations, he speaks to the harm he has caused, and I can state unequivocally, there is NO chance his actions will repeat. Furthermore, I am confident, if given the chance, Brad will start his life over and be a productive member of society in a way we can all be proud. I plead with you, to allow him this fresh start. The concern here should be to the victims, and the only realistic way to pay back them back, and give back to his community, is to devote his life's work to this cause. Prolonged incarceration cannot solve this.

I have lost most of my family over this, but now I have my brother back and with all the loss, I am truly grateful for that.


Sincerely,



Melissa Ruderman

Exhibit 39